H. J. GOFF AND H. J. GOFF, THE ADMINISTRATOR OF THE
ESTATE OF DAVID B. GOFF, DECEASED, PLAINTIFF AND RE-
SPONDENT, v. SAMUEL J. KINZLE AND MOUNTAIN
STATES TELEPHONE AND TELEGRAPH COMPANY, A
CORPORATION, DEFENDANTS AND APPELLANTS.

No. 10966.
Submitted May 3, 1966. Decided July 19, 1966.
417 P.2d 105.

Leonard H. Langen (argued), Glasgow, for appellants.

Robert W. Holmstrom, Billings, Franklin S. Longan (argued), Billings, Francis Gallagher (argued), Glasgow, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This appeal involves an action for the death of a sixteen year old boy as the result of a motorbike and pickup truck collision on U. S. Highway 2 at Glasgow, Montana. The jury found in favor of the defendants and after hearing a motion for new trial the district judge granted the motion. This appeal followed.

The accident occurred at the intersection of Highway 2 and Cemetery Road located in the City limits of Glasgow, Montana,

at about 7:20 P.M. on New Years Eve, December 31, 1963. Samuel J. Kinzle, one of the appellants, is a wire splicer for the Mountain States Telephone and Telegraph Company, (hereafter called Telephone Company) and on that day had driven from Glendive, Montana, to Glasgow, Montana, his home office. He arrived at about 4:00 P.M., did the necessary checking in and cleaning up his desk and then after 5:00 P.M. joined a few of the boys in some New Year's cheer. He testified that after 5:00 P.M. someone brought in a bottle of bourbon and they had a card party; and between the hours of 5:00 P.M. and 7:00 P.M. when he left for home he had two drinks—called bourbon and ditch. At about 7:00 P.M. his wife called him and shortly thereafter he started home in a 1955 Ford ½ Ton pickup owned by the defendant Telephone Company. Testimony showed that at the time of the accident it was dark and that Kinzle had his lights on. The road was a four lane highway and it was dry. The Kinzle driven vehicle was proceeding easterly and a Yamaha motorbike driven by decedent, David B. Goff, was going in a westerly direction. Defendant Kinzle testified he drove up to the intersection in the middle lane preparatory to making a left turn. He was not certain whether he stopped or only slowed down for the intersection, but was certain that he had shifted down to low gear and that if he did not stop he almost stopped. He was not certain whether or not he had activated the mechanical turn signal. He recalled a vehicle at the intersection that was coming from the West this being a vehicle driven by a Sgt. Cook who witnessed the accident. When he pulled into the intersection he testified he had checked for vehicles coming from the West and both North and South on Cemetery Road, the intersecting road. Seeing nothing he proceeded until he had just about passed the westerly boundary of the intersection when he caught sight of the motorbike, coming at him at an angle. He immediately accelerated and shortly after felt a bump against his vehicle. He immediately stopped, went back and found the deceased attended by Sgt. Cook and

some airmen who were riding in his car. Defendant Kinzle told Sgt. Cook he would get an ambulance and then drove to his home a short distance away and had his wife call for the ambulance. Shortly thereafter he returned to the scene of the accident.

Sgt. Cook testified that on the evening of December 31, 1963, he was driving his personal vehicle and had picked up some Airmen coming to town. Before reaching the intersection in question he noticed a light following his car, and that sometime later he noticed over his left shoulder that the light was just off his left fender, pulling up and passing his vehicle. It was then he saw that it was a motorbike. As they approached the intersection in question the bike had pulled ahead of his vehicle and he estimated its speed between 30 and 35 miles per hour. As they neared the intersection he observed the defendant Kinzle's vehicle ahead of him, saw it make a left hand turn and observed the accident. Sgt. Cook and the men in his car stopped and gave immediate aid to the Goff boy. He testified that the boy was alive, and medical testimony was introduced that he lived until 8:10 P.M. or just under an hour from the time of the accident.

All of this and other evidence went to the jury resulting in a verdict for both defendants.

Respondent's attorneys learned just after the trial ended that one of the jurors, the foreman, had gone to the scene of the accident the night before the case went to the jury, and conducted his own investigation at the scene to check the testimony given; spending some 30 to 45 minutes carrying out experiments, and that he then went home and prepared a map as near to scale as possible which he took to the jury room the next day where he showed it to the jurors and told them of the experiments he had conducted. On the basis of affidavits from the jurors, including the foreman, respondent's attorneys moved for a new trial. The appellants submitted counter-affidavits of other jurors to the effect that this outside evidence had not in-

fluenced them in their decision and following a hearing the district judge granted respondent's motion for a new trial.

Appellants set forth three specifications of error, the first concerning the court's failure to give an instruction, the second and third concern alleged error in granting a new trial.

The major issue as covered by the second and third specifications of error is whether the trial court had jurisdiction to grant the new trial and we will discuss these first.

Under Rule 59, M.R.Civ.P., the trial judge may grant a new trial for any of the reasons provided by the statutes of Montana. This rule, as shown by the Commission notes, is identical with Federal Rule 59, except that subdivision (a) has been rewritten to adapt it to state practice.

In considering misconduct of jurors as a reason for granting a new trial 6 Moore's Federal Practice, § 59.08 [4], p. 3800, states: "* * * It is misconduct for one of them [a juror] to assume a role of inspector or investigator, * * *. If the conduct can be established by competent proof, and is prejudicial, a new trial is warranted." Citing Southern Pacific Co. v. Klinge, (C.C.A. 10th 1933) 65 F.2d 85; Stevenson v. Tennessee Copper Co., (C.C.E.D.Tenn.1911) 193 F. 268.

In view of what was shown here by the affidavits that the foreman made his own investigation at the scene of the accident after hearing the testimony, we must conclude that these acts clearly constitute misconduct. It is not within the province of a juror to make an independent investigation, carry out certain experiments and then make a map and take it with him to the jury room and there display and comment thereon.

The appellants' position is that the trial court was in error on the grounds that the jury verdict cannot be impeached by affidavits from the jurors except when the verdict was reached by chance. He relies upon R.C.M.1947, § 93-5603, subd. 2, and the cases cited thereunder, asserting that the rule is that a verdict cannot be impeached by jurors who rendered it except where the affidavits show that there verdict was reached by

66

other than a fair expression of all the jurors. State acting by and through State Highway Commission v. Manry, 143 Mont. 382, 390 P.2d 97. The rule is not applicable to affidavits that bring to the court's attention facts of irregularity and misconduct. Such affidavits are competent. Putro v. Baker, 147 Mont. 139, 410 P.2d 717; Kincaid v. Wade (1966), 196 Kan. 174, 410 P.2d 333.

In Putro v. Baker, supra, this court has recently granted a new trial where affidavits were introduced showing a juror brought to the jury room a newspaper clipping damaging to the defendant. The reason for such a rule is clear. A "fair trial" as the term is applied to a judicial proceeding, anticipates the right to object to the admission of evidence, the right of cross-examination and to rebut evidence introduced. All of this is denied where a juror makes an independent examination of an issue of fact and reports to the jury in the secrecy of its deliberations. We doubt that a party could hardly be said to have a trial by jury as the term is understood in American jurisprudence, if each juror were permitted to make an independent investigation of the facts.

Appellants argue however that "the long established rule in the States of Montana and California has been that a verdict cannot be impeached by affidavits of jurors that some of their number were guilty of misconduct during their deliberations. The only exception to this rule is in the case of verdicts reached by chance." However, there is a contra matter of public policy to be considered. Improper conduct on the part of a juror is charged to the entire panel, as jurors operate as a unit, and public policy demands that misconduct be discouraged, and, insofar as possible, prohibited.

Mr. Justice Holmes stated over a half century ago, what has been the undeviating rule of the United States Supreme Court, in the case of Patterson v. State of Colorado (1907), 205 U.S. 454, 462, 27 S. Ct. 556, 51 L.Ed. 879.

"*** The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."

In our view, public policy demands that facts of irregularity and misconduct of a juror be brought to the court's attention by affidavits. We find no merit to the second and third specifications of error and hold that the court had jurisdiction to grant a new trial. See, also, Clark v. Wenger, 147 Mont. 521, 415 P.2d 723.

Turning now to the first specification of error, the court's failure to give appellants' proposed Instruction 14, which is stated to have been Instruction 20.02 of the Montana Jury Instruction Guides prepared by the Montana Judges Association. The court refused the instruction on its own motion and in defense of the proposed instruction appellants' counsel stated that the instruction should be given in those cases where contributory negligence is one of the issues. Aside from this comment, which is carried in the Montana Jury Instruction Guides, appellants' only argument is that this court has commended the practice of setting forth in the instructions a clear and concise statement of the nature of the case and the issues. Respondent's reply to these arguments is that the trial court erred in submitting the issue of contributory negligence to the jury.

A review of the instructions given would seem to us to present a clear and concise statement of the nature of the case and the issues and we fail to see wherein the failure of the trial court to include this instruction was in any way prejudicial.

Respondent has commented in his brief with respect to certain instructions, contending they were erroneous, but no cross-assignments of error have been made so we see no necessity to comment thereon.

By what has been said above with respect to instructions we are not to be understood as approving the instructions given by the court, nor disapproving the same; our situation being that we do not feel called upon to make any determination with respect thereto except as to proposed Instruction 14.

Having held that the trial court had jurisdiction its action in granting a new trial is affirmed.

MR. JUSTICES JOHN C. HARRISON, DOYLE, ADAIR and CASTLES concur.