CHARLES G. JOHNSON AND EUNICE JOHNSON, PLAINTIFFS AND APPELLANTS, *v.* EARL J. GREEN, DEFENDANT AND RESPONDENT.

No. 11466.
Decided July 1, 1969.
456 P.2d 290.

Knight, DaHood Mackay, Anaconda, Wade J. DaHood (argued), Anaconda, for appellants.

Maffei & Harrington, Butte, Maurice A. Maffei (argued), Butte, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

Involved is an attack on a jury verdict and the resulting judgment for defendant Earl J. Green, on the basis of the absence of the presiding judge and an affidavit of all twelve jurors certifying that "If the Presiding Judge had been available to answer our questions we certify that the verdict would have been different * * *".

Plaintiffs, Charles G. Johnson and Eunice Johnson, allegedly rented a building in Anaconda to defendant from February 1, 1964 to December 22, 1964, at a rental of $150 per month for a laundry business. Plaintiffs alleged they were not paid the rental and sued to recover, plus damages for repairs and replacement and for attorney fees. The total amount sued for was $2,346.25.

The defendant denied renting the building for the period of February 1, 1964 to December 22, 1964, denied damage and denied any contract for attorney fees. Defendant counterclaimed asserting renting from January 1, 1961 to October 31, 1963 and that during that time the roof leaked causing damage to equip-

ment and clothing and sought the sum of $2,980.37 as damages.

Trial was had; Evidence presented and both sides rested.

Judge Nat Allen, the presiding judge, who assumed jurisdiction after the local judge was disqualified, instructed the jury and then stated:

"Ladies and gentlemen of the Jury. The attorneys have kindly consented that Judge Stewart may take the verdict in this case, and when you come back I will be headed for Roundup, and Judge Stewart will be here to take the verdict, and I thank both attorneys for so stipulating. I want to thank the Jury for your kind attention to this case—you have been very good, and I know that it is a hard case to sit and listen to in those hard chairs—some of you have been complaining about the hard chairs, and I have spoken to Judge Stewart about this, but, of course, I don't guarantee that the next time they are going to be soft, but at least he has the information. I want to commend the attorneys for their fine presentation of this case, and I must say that it is always a pleasure to preside before two attorneys with the integrity and ability that you gentlemen have shown on both sides of this case, and it certainly was a pleasure to be here in Anaconda, and I think I should thank you very kindly, both of you."

The jury then retired and brought in a verdict, which read, in pertinent part: "We, the jury in this action, find for the Defendant. Dated this 5th day of October, 1967." The verdict was received by Judge Stewart and judgment entered thereon for costs.

We have only a partial transcript showing the remarks of Judge Nat Allen previously quoted and the agreement of counsel to those remarks. We also have the original court file and the exhibits contained in the court file and the instructions given. We are told, without dispute, that the jury was furnished with two forms of verdict, one for the defendant and one for the plaintiffs. The verdict form for the plaintiffs had a blank, which was to be filled in with the amount if the verdict was

in favor of the plaintiff. As related before, the jury used the form for the defendant with no amount or no blank. The judgment was for costs of $26.50, dated October 11, 1967.

Subsequently on October 20, 1967, a notice of intention to move for a new trial was filed which listed among other grounds charges of irregularity of the jury proceedings. The motion for new trial was based in part upon an affidavit of the jurors. The affidavit, dated October 13, 1967, signed by all twelve jurors read as follows:

"We, the undersigned Jurors, in the above entitled case do hereby state that we were in favor of the plaintiffs having our verdict in the above entitled case but we were under the impression that our verdict for the plaintiffs would necessarily have to award them the full amount and many of us did not think that the plaintiffs should have the full amount although they should have some amount awarded in their favor. We were told that the Presiding Judge was leaving Anaconda as soon as we retired to the jury room and so we were of the opinion we could not have our questions answered as to whether or not we could award the plaintiffs less than the full amount asked by them. We finally decided it had to be the full amount or nothing. If the Presiding Judge had been available to answer our questions we certify that the verdict would have been different and for that reason we are signing this affidavit in support of the plaintiffs' motion for a new trial because we now know that we could have awarded the plaintiffs something less than the full amount."

Two other affidavits were filed by counsel for the defendant. One juror averred that on the first ballot the vote was six to six. The second affidavit was by the bailiff who states that no request was made by any juror during its deliberations.

The motion for new trial was denied by Judge Allen after oral argument and briefs; this appeal followed raising two stated issues: first, that error was committed by the presiding judge leaving the trial court; and, second, that plaintiff was de-

nied due process of law. On this second so-called issue, the assertion is that because the judge was absent the jurors could not have answers to their questions and thereby a fair trial was denied.

It is immediately apparent that when counsel agreed to Judge Allen leaving the district with Judge Stewart being present to take the verdict that they should not be heard to complain on appeal. The instructions given were quite simple, no problem over the issues is apparent. No instruction specifically on damages was given, and we assume none was offered by plaintiffs other than the form of the verdict with a blank to be filled in. We can assume too, that counsel in his closing argument discussed the matter of damages.

While we do not approve of judges leaving the trial while a jury is deliberating, yet where counsel accedes to it specifically he will not be heard to complain on appeal. See State v. Oakland & Friedlund, 129 Mont. 347, 287 P.2d 39.

The rule is generally stated that the propriety of a trial judge's remarks (or conduct) where not objected to cannot be raised on appeal. Batchoff v. Craney, 119 Mont. 157, 172 P.2d; 308; also, New York Life Ins. Co. v. Gamer, 9 Cir., 90 F.2d 817, ceriorari granted 302 U.S. 670, 58 S.Ct. 46, 82 L.Ed. 517, reversed 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218.

But we go one step further. The rule in Montana is that a jury may not impeach its own verdict based on mistake of the evidence or misapprehension of the law. See Putro v. Baker & Mannix Electric, 147 Mont. 139, 410 P.2d 717; Goff v. Kinzle, 148 Mont. 61, 417 P.2d 105; Clark v. Wenger, 147 Mont. 521, 415 P.2d 723. In these three cases misconduct of a juror or the jury was the matter reached. In the instant case the jury is attempting to impeach its own verdict, based on mistake of evidence or misintrepretation of instructions. Further, the jury was informed that Judge Stewart was present. It did not attempt to ask any questions. Clearly its conduct comes under the rules stated above.

Finding no error, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, HASWELL, and BONNER, concur.