No. 81-118

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

MARJORIE HARRY,

Plaintiff and Respondent and
Cross-Appellant,

vs.

BILL ELDERKIN and SANDY ELDERKIN,

Defendants and Appellants and
Cross-Respondents.

---

Appeal from: District Court of the Eleventh Judicial District,
In and for the County of Flathead
Honorable James M. Salansky, Judge presiding.

Counsel of Record:

For Appellants:

Warden, Christiansen, Johnson and Berg, Kalispell,
Montana
Stephen C. Berg argued, Kalispell, Montana

For Respondent:

Hash, Jellison, O'Brien and Bartlett, Kalispell,
Montana
James C. Bartlett argued, Kalispell, Montana

---

Submitted: October 20, 1981

Decided: DEC 1 1981

Filed: DEC 1 - 1981

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal from an order of the District Court for the Eleventh Judicial District, Flathead County, granting a new trial to the plaintiff in a personal injury action. The plaintiff cross-appeals from the contributory negligence instructions.

The plaintiff, Marjorie Harry, is the mother of defendant Sandy Elderkin, who was the wife of defendant Bill Elderkin. During June, 1976, Mrs. Harry was visiting the Elderkins at their home in Kalispell, Montana. At the time of her visit, Bill Elderkin was in the process of constructing a cabinet shop in the backyard of the Elderkin home. A trench had been dug approximately four feet deep, and cement had been poured into plywood forms constructed in the trench. A garden was located next to the cabinet shop foundation, and the remainder of the backyard was covered with black plastic and gravel.

On June 12, 1976, Sandy Elderkin invited her mother into the backyard to view the garden. Mrs. Harry had not been in the backyard since her arrival, but she was aware of the construction project. Bill Elderkin was in the process of removing braces and forms from the foundation. As Sandy Elderkin and Mrs. Harry walked along the pathway between the garden and the construction site, Sandy bent down to remove a board from the garden. Mrs. Harry took a step backwards with her right foot towards the trench, the ground gave way, and she fell into the trench and caught her left ankle on a brace. As a result of the accident, Mrs. Harry suffered a severely broken left ankle and received extensive medical treatment.

In October, 1977, Mrs. Harry was still experiencing difficulties due to severe degenerative arthritis of the ankle caused by the fracture. Dr. Laidlaw advised Mrs. Harry that she would eventually require an ankle fusion to alleviate the pain caused by the rubbing of bone upon bone in the ankle joint. In

May, 1978, Dr. Laidlaw again advised Mrs. Harry that she was in need of an ankle fusion. Mrs. Harry was also seen by Dr. Maruyama, an orthopedic surgeon in Colorado, who advised her in November, 1978, and in November, 1980, that she should have an ankle fusion but that she should first lose fifty pounds. At the time of trial, Mrs. Harry was scheduled to have the ankle fusion but had not yet done so.

Mrs. Harry brought an action against the Elderkins for damages for personal injury. The District Court denied the summary judgment motions of both parties and a jury trial commenced on December 15, 1980. The jury rendered a special verdict in which it found the plaintiff to have been 85% negligent and the defendants to have been 15% negligent. The full amount of damages sustained by the plaintiff was found to be $15,000. The District Court ordered that judgment be entered on the verdict on behalf of defendants and against the plaintiff.

The plaintiff moved for new trial on the grounds of irregularity in the jury proceedings, misconduct of the jury and insufficiency of the evidence to support the verdict. The motion was supported by an affidavit of the jury foreman, which stated:

> " . . . (2) That at the time the Special Verdict Form was completed, Affiant and his fellow Jurors believed and they intended that Mrs. Harry was awarded a Judgment in the sum of $15,000.00;

> "(3) That Affiant and his fellow Jurors assigned a percentage of 85% to Marjorie Harry as justification for the award of $15,000.00 to her; and that in determining the 85%, Affiant and his fellow Jurors believed that a significant factor, but not the only factor, was the failure of Marjorie Harry to have her ankle fused when first suggested by her physicians, and that much of her problems could have been alleviated had the fusion taken place."

By an order dated January 2, 1981, the District Court granted plaintiff's motion for a new trial and found that:

> ". . . the jurors, or some of them, did not understand the doctrine of comparative negligence, did not apply the law correctly

- 3 -

relative to contributory negligence, were incon-
sistent in their answers on the Special Verdict,
and reached a result that they did not intend
when the Court applied the proportion of contri-
butory negligence they ascribed to the
Plaintiff."

The Elderkins contend that the District Court manifestly abused its discretion in granting Mrs. Harry a new trial. They argue that there was no irregularity in the proceedings, that the jury may not impeach its own verdict based upon a misapprehension of the law, and that there was sufficient evidence to support the giving of the contributory negligence instruction. Mrs. Harry contends she is entitled to a new trial as a matter of law due to an error in instructing the jury. She further asserts that this is a proper case for determining whether the rules of status of persons injured on real property should be abolished.

We decline to address the latter issue as we find it is not properly before us. The trial of this case occurred prior to our decision in Corrigan v. Janney (1981), ____Mont.____, 626 P.2d 838, 38 St.Rep. 545, in which we held that a landlord is under a duty to exercise ordinary care in the management of the premises to avoid exposing persons thereon to unreasonable risk of harm. Mrs. Harry asserts that this rule of law issued while her case was pending on appeal should be expanded and applied to her case by virtue of the plain error rule. This is not an appropriate case for application of the plain error rule enun- ciated in Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169. It is only when the trial court has committed an error which results in a denial of substantial justice that we can review an error not objected to at trial. Plaintiff's counsel indicated satisfaction with the instructions on the standard of liability, and he may not now argue the academic issue that the law should be changed.

Mrs. Harry's motion for a new trial was premised upon sec- tion 25-11-102(1), (2), and (6), MCA. Although the District Court order granting a new trial does not specify the subsec-

- 4 -

tion upon which it is based, it is clear that the court relied upon the jury foreman's affidavit and determined that either an irregularity in the jury proceedings or misconduct of the jury had occurred.

Juror affidavits are not permissible in support of a motion for new trial based upon an irregularity in the jury proceedings, section 25-11-102(1), MCA. Rasmussen v. Sibert (1969), 153 Mont. 286, 456 P.2d 835. Therefore, if a motion for new trial was properly granted under subsection (1), an irregularity in the jury proceedings must have existed independent of any consideration of the jury foreman's affidavit. The District Court order makes reference to an inconsistency in the answers on the special verdict. On its face, however, the special verdict does not contain any inconsistent answers. Both parties were found to have been negligent, a total amount of damages was assessed and percentages of negligence were ascribed to each party. Absent consideration of the juror affidavit, we find no irregularity in the jury proceedings requiring a new trial under section 25-11-102(1), MCA.

Plaintiff further argues that even though juror affidavits cannot be used under section 25-11-102(1), the trial court could have found from an independent review of the evidence, without considering the juror affidavit, that the result reached by the jurors was not the result intended by them. The court may on its own initiative order a new trial for any reason for which it might have granted a new trial on motion of a party. Rule 59(e), M.R.Civ.P. This does not alter the fact that, absent consideration of the juror affidavit, there was no basis for a new trial under section 25-11-102(1), MCA.

Jury misconduct as a ground for new trial may be shown by juror affidavit according to section 25-11-102(2), MCA. As jury misconduct, the respondent refers to (1) the error of the jurors in considering her failure to have an ankle fusion as negligence

and (2) setting her total damages as $15,000 and assigning 85% negligence to the respondent. Montana law on the use of juror testimony and affidavits upon an inquiry into the validity of the verdict is concisely summarized by Rule 606(b), Montana Rules of Evidence as follows:

> "Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict or indictment or concerning his mental processes in connection therewith. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

> "However, as an exception to this subdivision, a juror may testify and an affidavit or evidence of any kind be received as to any matter or statement concerning only the following questions, whether occurring during the course of the jury's deliberations or not: (1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance."

The cases on the use of juror affidavits fall into two major categories: 1) those involving external influence on the jury, and 2) those involving internal influence on the jury. Where external influence is exerted on the jury or where extraneous prejudicial information is brought to the jury's attention, juror affidavits can be the basis for overturning the judgment if either party was thereby deprived of a fair trial. Schmoyer v. Bourdeau (1966), 148 Mont. 340, 420 P.2d 316 (juror telephoned a relative with regard to previous litigation by plaintiff); Goff v. Kinzle (1966), 148 Mont. 61, 417 P.2d 105 (juror visited scene of accident, conducted experiments and told jury of his findings); Clark v. Wenger (1966), 147 Mont. 521, 415 P.2d 723 (juror had received evidence outside of court which made him a

witness against the plaintiff); Putro v. Baker (1966), 147 Mont. 139, 410 P.2d 717 (juror brought newspaper article into jury room and showed it to jury). On the other hand, juror affidavits may not be used to impeach the verdict based upon internal influences on the jury, such as a mistake of evidence or misapprehension of the law. Groundwater v. Wright (1979), 180 Mont. 27, 588 P.2d 1003, (jury misunderstood the law); Charlie v. Foos (1972), 160 Mont. 403, 503 P.2d 538 (jury desired to be discharged, did not understand law of contributory negligence); Rasmussen v. Sibert, supra (plaintiff's witness referred to defendant's insurance, which was considered by the jury); Johnson v. Green (1969), 153 Mont. 251, 456 P.2d 290 (presiding judge not available to answer jury question on instructions but another judge was available).

Here, the juror affidavit reflects the foreman's belief that the jury did not understand the instructions on contributory negligence, comparative negligence and mitigation of damages. This case falls into the category of cases involving internal influences on the jury. We hold that the District Court abused its discretion in granting a new trial on the basis of a juror affidavit which purports to impeach the verdict by delving into the thought processes of the jurors.

Nonetheless, Mrs. Harry contends that she is entitled to a new trial because 1) the instructions on contributory negligence and mitigation of damages were erroneous, and 2) there was insufficient evidence to support the giving of the contributory negligence instruction and to support the verdict that Mrs. Harry was 85% negligent.

We find that the plaintiff failed to object at trial or in her motion for new trial to the substance of the instructions on contributory negligence and mitigation of damages and that the issue of erroneous instructions is not before us. We further find that the evidence was sufficient to support the giving of the instruction on contributory negligence and to support the

finding that Mrs. Harry was 85% negligent. Mrs. Harry was married to a construction worker with whom she traveled around the world to various construction sites. She testified that she was aware of some of the dangers inherent in a construction site and acknowledged the danger of the ground giving way. The jury could have inferred that she knew or should have known that if she stepped too close to the trench the ground might cave in. Mrs. Harry had poor vision in her right eye. She testified that she pivoted towards the right and stepped as close as 12 inches from the edge of the trench without looking where she was stepping. The jury was instructed that all persons are required to be observant and to take such measures as are necessary to protect themselves. The evidence supported the giving of the instruction and the verdict.

The order of the District Court granting a new trial to the plaintiff is vacated. The judgment on the verdict stands.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

Justices

Mr. Justice John C. Sheehy dissenting:

The majority opinion takes too narrow a view of our duty on appeal from an order _granting_ a new trial.

There are special rules which apply to an appeal from an order _granting_ a new trial. In section 3-2-204, MCA, defining the power of the Supreme Court, it is stated:

> "(3) In giving its decision, if a new trial be granted, the court must pass upon and determine all the questions of law involved in the case presented upon such appeal and necessary to the final determination of the case."

As far as I can find, the Montana Supreme Court has not passed upon the extent of its power to review a grant of a new trial. In California, however, under a similar rule, the order granting a new trial must be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons. Treber v. Superior Court (Cal. 1968), 436 P.2d 330, 334. The court there quoted with approval from a statement contained in a case as old as Kauffman v. Maier (1892), 94 Cal. 269, 276, 277, 29 P. 481, 482, to the following effect:

> "A party has the right to move for a new trial upon any or all of the grounds permitted by the statute, and if the record on which his motion is based discloses more than one ground for which a new trial should be granted, the court cannot, by stating in its order that the motion is granted upon one ground only, and denied upon the others, deprive the other party of the right to a review by this Court of the entire record . . . If there be any grounds upon which its action can be upheld, the order will be sustained _irrespective_ _of the particular ground given by that court,_ _whether in an opinion or by a statement in the_ _order itself._" (Emphasis added.)

Grounds upon which a party may move for a new trial are contained in section 25-11-102, MCA. They include "irregularity in the proceedings of the . . . jury", "misconduct of the

- 9 -

jury", "insufficiency of the evidence to justify the verdict", and that the verdict "is against law." In moving for a new trial in this case, the plaintiff utilized all four of those grounds. If she was entitled to a new trial on any one of those grounds, under the statute, section 3-2-204(3), MCA, and the rule enunciated in Treber, supra, the order of the District Court in this case granting a new trial ought to be sustained. The majority opinion ignores this elemental rule of the extent of review on orders granting a new trial, to the prejudice of the plaintiff.

The verdict in this case is against law because of an inherent error in the instructions as submitted to the jury. The trial court submitted a special verdict for a determination of the comparative negligence issues, and at the same time submitted an instruction which properly should be used only with respect to a general verdict. The basic underlying error here is not what the jury did, according to the affidavit of one juror, in arriving at the verdict. I give no account to that at all. Rather, the basic underlying error here is that the jury, instructed with respect to the finding of a general verdict, applied that rule in finding its special verdict. That is the basic error which gives rise to the propriety to the grant in this case of a new trial.

In fact I find no error in the instruction given by the court for the minimizing of her personal injuries. The court in that connection instructed the jury as follows:

"It is the duty of a person who has been injured to use reasonable diligence in caring for her injuries and reasonable means to prevent their aggravation and accomplish healing.

"When one does not use reasonable diligence to care for her injuries, and they are aggravated as a result of such failure, the liability, if any, of another whose act or omission was a

- 10 -

proximate cause of the original injury, must be limited to the amount of damage that would have been suffered if the injured person himself had exercised the diligence required of her.

"From the mere fact that a competent physician advised an injured person to submit to a course of treatment or operation we are not justified in inferring that the injured person was negligent or unreasonable in declining such treatment or operation. Other factors as they confronted the injured person must be considered in determining whether, although she refused to follow the physician's advice, she nevertheless exercised reasonable diligence in caring for herself and her injuries." (Court's instruction no. 18.)

The foregoing instruction on minimization is an exact copy of instruction no. 14.67 contained in BAJI (5th ed. 1960).

The error arose in this case because the District Court submitted a special verdict, without an instruction telling the jury how to use the special verdict. As filled out by the jury the special verdict is as follows:

"We, the Jury, answer the questions submitted to us in this Special Verdict as follows:

"QUESTION No. 1. Were the Defendants guilty of negligence which was the proximate cause of the claimed damages? ANSWER: Yes___X___. No _____.

"If you have answered the above question "NO", you will not answer the remaining questions but will simply sign the verdict and call the bailiff.

"If you have answered Question No. 1 "YES", then you must answer Question No. 2.

"QUESTION No. 2. What is the full amount of damages that you find sustained by the Plaintiff? $15,000.00.

"QUESTION No. 3. Was the plaintiff guilty of negligence which was the proximate cause of the alleged damages? ANSWER: Yes ___X___. No _____.

"If you have answered "NO" to Question No. 3, then you will not answer Question No. 4, but will simply sign the Verdict and call the bailiff.

"If you answered "YES" to Question No. 3, then you must answer No. 4.

"QUESTION No. 4. Considering the negligence of the plaintiff and the defendants that caused the accident at a total of one hundred percent (100%), what percentage is attributable to:

"(a) the Plaintiff     85        %
"(b) the Defendants    15        %
          "TOTAL      100        %"

The problem in this case comes about because court's instruction no. 10 instructed the jury as though it were to return a general verdict after having determined all the issues in the cause:

"You are instructed that the laws of the State of Montana provide that contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom the recovery is sought, but any damage allowed shall be diminished in proportion to the amount of the negligence attributable to the person recovering."

The court gave its instruction no. 27, which is usual in form, but in this case helped to cause the error:

"Upon retiring to your jury room you will choose one of your number foreman, who will sign your verdict when you shall have agreed upon one. Eight (8) or more of your number must agree in arriving at a verdict. When you have arrived at a verdict and the same has been signed by your foreman, you will notify the bailiff who will return you into court."

Because the jury was given a special verdict to determine the issues, instruction no. 10 above should not have been given at all. It directly conflicts with the directions in the special verdict. The editors of BAJI also agree that an instruction in the form of instruction no. 27 should never be given with a special verdict. Form 15.15, BAJI (5th ed. 1960), comment (1975 cum. pocket part).

- 12 -

Because the court in this case was submitting a special verdict to the jury which would have the effect of determining the kind of general verdict that eventually would be entered in the cause, it should have followed the example in BAJI, and used form no. 15.15 as a concluding instruction to the jury. That instruction should have been as follows:

> "You shall now retire and select one of your number to act as foreman who will preside over your deliberations.
>
> "In this case you will not return a general verdict in favor of either party. Instead, it will be your duty to return only a special verdict in the form of written answers to such of the issues upon which you have been directed to make findings as are required according to the directions in the form of special verdict which will be submitted to you.
>
> "As soon as eight or more identical jurors have agreed upon every answer required by such directions, so that each of those eight or more may be able to state truthfully that every answer is his or hers, you shall have your verdict signed and dated by your foreman and then shall return with it to this room." Form 15.15, BAJI (5th ed. 1960)(1975 cum. pocket part).

By use of the foregoing concluding instruction, the trial court would have avoided what is inherently possible in this case, that the jury fixed the general damages as though it were finding a general verdict, and it would be certain that the verdict was the answer of an identical eight jurors in the case.

Because we are commanded by statute to review all of the record on an appeal from an order granting a new trial, and because at least it fits in the "plain error" rule enunciated in Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169, this case should be affirmed, insofar as it grants a new trial of all the issues in the cause.

If the majority had agreed to affirm the grant of a new trial, I should also have discussed the "status" question of an invitee under Montana law for the guidance of the District Court in the new trial.

- 13 -

_____
John C. Sheehy
                Justice

We concur in the foregoing dissent.

_____
Daniel J. Shea

_____
            Justices

Mr. Justice Frank B. Morrison, Jr., dissenting:

I concur with the remarks made by Justice Sheehy respecting our power to review. In this case the plaintiff, in the motion for new trial, sufficiently specified statutory grounds which permit us to treat the real error in this case.

The error committed by the trial court was in giving court's instruction No. 18 on mitigation of damage without giving an accompanying instruction which would prohibit the jury from considering failure to mitigate as part of the liability negligence assessed in the special interrogatory.

Any conduct of the plaintiff in failing to mitigate damages can only reduce the amount of damages to be recovered. Such failure on the part of the plaintiff can never be considered in the liability part of the case. Here the trial court erred because the trial court permitted the jury to use plaintiff's apparent failure to mitigate as part of plaintiff's negligence under the comparative negligence statute. In the special verdict answer to "question No. 4" the jury found the plaintiff to be guilty of 85% of the total negligence. Under the court's instructions, the jury was permitted to include, within the 85% assignment, conduct of the plaintiff in failing to mitigate damages. This, of course, was error.

I agree with the majority that a jury verdict cannot be impeached by way of affidavit, as was done here. The trial court granted a new trial for the wrong reason. However, there is clear error in record which justifies the granting of a new trial. Therefore, I would affirm the trial court's

action and remand for proceedings in conformity with this

dissent.

_____
Justice