No. 85-155

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

THE STATE OF MONTANA, ACTING BY AND
THROUGH THE DEPARTMENT OF HIGHWAYS
OF THE STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

VICTOR and VIBEKE DeTIENNE,
husband & wife,

        Defendants and Appellants.

---

APPEAL FROM: District Court of the Fifteenth Judicial District,
In and for the County of Sheridan,
The Honorable R. C. McDonough, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        O'Toole & Hunt, Plentywood, Montana

    For Respondent:

        Beate Galda, Dept. of Highways, Helena, Montana

---

Submitted on briefs: July 25, 1985

Decided: October 10, 1985

Filed: OCT 10 1985

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Fifteenth Judicial District, Sheridan County, Montana, in a highway condemnation action. A six-man jury found the defendant-appellants negligent in constructing a building as close to the highway as they did and returned a verdict for the appellants of $5,802.60 for the land taken by the State of Montana. The jury found no depreciation to the remaining property. We affirm.

The plaintiff, State of Montana, through the Department of Highways, brought an action to condemn private property owned by defendants, Victor and Vibeke DeTienne, for construction of a state highway pursuant to § 60-4-102, MCA. The property in question is an 8.36 acre tract containing two steel buildings located east of Plentywood. One of the buildings, a 70' x 180' structure, used in part for a garage and sales office for trucks and equipment and in part for storage of lumber and building materials, is affected by the location of a new highway. The highway right-of-way was 95 feet from the building before the construction project, but the new right-of-way is about 4½ feet from one corner of the building. When the building was built there was adequate room to back a 60 to 80 foot semi-truck into the building. It is now difficult to drive trucks into the building and impossible to drive them completely around the building because of the location of the new highway. A hearing to determine the value of the property being condemned was held before a three-man value commission who valued the land and improvements taken at $5,800 but found no depreciation to the

remainder. The DeTiennes appealed that finding to the District Court.

The issues presented to the Court are:

(1) Whether the jury statement that appellant was negligent in constructing his building too close to the highway constitutes reversible error.

(2) Whether the court erred in granting the State's motion in limine concerning sales between other land owners on the project and the State as condemning authority.

(3) Whether the court erred in admitting certain of the State's exhibits.

(4) Whether the court erred in giving its jury instruction on the "quotient method" for determining damages to be awarded.

(5) Whether the court erred in refusing to give DeTiennes' proposed jury instruction on inconvenience of use.

In an eminent domain action the right of the property owner to receive compensation accrues at the date of the service of summons (the taking), in this case July 30, 1982. The fair market value of the property on that date is the measure of compensation for the property actually taken. Section 70-30-302(1), MCA. It is only that value which is relevant. The DeTiennes' building was lawfully constructed before the taking and the reasons for its location in relation to the new highway are irrelevant to the value of the land at the time of the taking. The only issues properly before the jury are the fair market value on July 30, 1982, of the land taken, and whether, as a result of the taking, the value of DeTiennes' remaining property, including the building, was depreciated. The jury found the remaining property did not depreciate. DeTiennes argue, however, the

3

jury made this finding on "negligence" rather than in accord with the instructions given and because no instructions on negligence were given, the jury's finding constitutes reversible error.

When the jury returned its verdict, the foreman, with the court's permission, made the following statement:

> Well, we were all wondering when we talked about this as to why that building was built that close to the highway, and we feel the defendant was negligent in doing what he did, building it that close to the highway.

It is doubtful the jury understood negligence as a legal term of art requiring the existence of a duty, but as it is commonly understood by the layman to mean careless or showing poor judgment. The court refused the Highway Department's motion in limine to exclude evidence of its discussions with DeTiennes in 1980 about the location of the building. The Highway Department argued the testimony could result in a verdict which was not based on fair market value but on location of the building. DeTiennes argued successfully the jury should hear the reasons for the location of the building and decide for itself whether the building should have been placed farther back from the highway. DeTiennes cannot now argue the jury's verdict was error because it was decided on negligence rather than in accord with the instructions given. By insisting the evidence of location be admitted, DeTiennes cannot now complain the jury verdict was not what they had expected, if in fact the verdict was even affected by the evidence. The law in Montana is clear:

> It has long been the rule of this Court that on appeal we will not put a District Court in error for a ruling or procedure in which the appellant acquiesced, participated, or to which appellant made no objection. [Citing cases.]

4

Green v. Green (1978), 176 Mont. 532, 536, 579 P.2d 1235, 1237.

There is no evidence showing the jury did not follow the court's instruction. The jury was properly instructed regarding the measure of damages in an eminent domain action. It heard valuation testimony from two witnesses. It reached a verdict within the evidence. It apparently agreed with the Highway Department appraisers and the three value commissioners in finding no depreciation. There is no evidence the jury reached its decision on the legal doctrine of negligence, which clearly is not part of this case. We do not find any improper conduct on the part of the jury or any prejudicial effect because of the foreman's comments. Although neither counsel objected to allowing the jury foreman's remarks, prudence suggests refusal of extraneous comments. The foreman's statement, however, is not reversible error. Nor do we find any indication the jury intended to, or did, impeach its verdict. "The rule in Montana is a jury may not impeach its own verdict based on mistake of the evidence or misapprehension of the law." Johnson v. Green (1969), 153 Mont. 251, 255, 456 P.2d 290, 293.

A second motion in limine offered by the Highway Department to prevent testimony from other land owners along the project regarding their sales to the Department was properly granted. The sales were not fair market transactions, but were made because of impending condemnation proceedings and therefore were not made between a willing buyer and a willing seller. See State v. Hoblitt (1930), 87 Mont. 403, 413, 288 P. 181, 185. "Current fair market value is the price that would be agreed to by a willing and

5

informed seller and buyer, . . . " Section 70-30-313, MCA.
The cases cited by DeTiennes, State v. Voyich (1963), 142
Mont. 355, 384 P.2d 765, and State v. Greenfield (1965), 145
Mont. 164, 399 P.2d 989, are not on point. In Voyich the
issue is comparability of the neighboring land and not the
final test of the market value of the property being
condemned. The issue in Greenfield is whether an expert can
testify as to comparable sales and the prices paid in
transactions between private persons before there was any
knowledge of condemnation of the lands for highway purposes.
The reasons for excluding evidence of such sales to a
condemning authority are well summarized in 5
Nichols on Eminent Domain §21.33, pp. 21-94 through 21-100
(Rev. 3rd. Ed. 1984) as follows:

> Even in those jurisdictions where
> evidence of comparable sales is admitted,
> it is generally held by the weight of
> authority that evidence of the sale of a
> parcel of land subject to condemnation to
> the proposed condemnor or to another
> potential condemnor may not be admitted
> as evidence of the value of the land
> condemned. Evidence showing what the
> company seeking to condemn has paid for
> other lands would probably be taken by
> the jury as indicating the market value,
> when, as a matter of fact, it does not
> tend to show the market value of the
> land. A company condemning land might be
> willing to give more than it is worth,
> and the owner of land might be willing to
> take less than it is worth, that is, less
> than its market value, rather than have a
> lawsuit. Moreover, when a company seeks
> to get land or condemn it for public
> uses, having the power to condemn, the
> landowner would probably come to some
> agreement with it rather than have a
> lawsuit, and this agreement would show a
> compromise rather than the market value
> of the land. There are many reasons
> which might be advanced in support of
> this almost, if not quite, universal
> rule. As heretofore stated, such sales
> are almost always in the nature of a
> compromise. The landowner, on the one
> side, may force a sale; and the

condemnor, on the other, must have the land, even though it costs more than its value. Again, the circumstances and surroundings are necessarily dissimilar, and the amount paid is not only the value of the land actually taken, but also the damages done to the entire tract, depending upon the exigencies of the location of the parcel acquired, the number of acres in the estate, and other facts peculiar to the particular case. All incidental damages are included, and these, of course, should not be taken into account in fixing the acreage value in the market. Evidence as to damages paid in one case would certainly not be admissible in order to determine the damages done in another. Such testimony does not, after all, go to the market value of the land, except incidentally, and it is not a reasonable or fair test of market value.

For these reasons we hold sales to condemnors are not admissible to establish fair market value when the sales are part of the same project which resulted in the condemnation of other property, however similar the property may be to that in controversy, and regardless of whether the payment was the result of a settlement, an award or a jury verdict. We agree with the Oregon Court in City of Portland v. Holmes (Or. 1962), 376 P.2d 120, 123, that there is a very real distinction between voluntary sales and sales made to authorities about to initiate condemnation proceedings. Only if the price paid is voluntary can it be a reasonable index of value.

DeTiennes argue admission of two of the Highway Department's exhibits constitute reversible error. DeTiennes objected to their admission during trial for the reason they did not believe the exhibits were official records. DeTiennes failed to object on the basis of lack of foundation and cannot do so now. This Court has ruled previously that a party complaining of error must stand or fall on the ground

7

relied on by the trial court. Teesdale v. Anschutz Drilling Co. (1960), 138 Mont. 427, 441, 357 P.2d 4, 11; and Bower v. Tebbs (1957), 132 Mont. 146, 160, 314 P.2d 731, 739. Rule 901, Montana Rules of Evidence, permits authentication of a document by testimony of a witness with knowledge that a matter is what it is claimed to be. This is precisely what was done here. Mr. Jay Randall, a district engineer for the Montana Highway Department, testified the documents in question were a set of construction plans for the Plentywood South project. Had DeTiennes been concerned with inaccuracies in the plans or whether the project was being built according to the plans, they could have attempted to show this. They did not show use of the exhibits at trial affected any of their rights, or they were prejudiced by their admission. For these reasons we find no error by the court in admitting the exhibits.

DeTiennes object to plaintiff's jury instruction on the "quotient method" for determining compensation:

> You are not permitted to arrive at the amount of compensation to be awarded by the "quotient method," or any other method whereby in advance of determining the amount, you agree to be bound by the determined amount. Rather, four or more of your number who have agreed to award damages must agree upon a specific amount known to each of you when you vote in favor of awarding that amount.

This instruction, indeed, may have a technical defect. Mere technical defects in the instructions, if considered as a whole, do not render such errors reversible error. Lauman v. Lee (Mont. 1981), 626 P.2d 830, 834, 38 St.Rep. 499, 503. The opening phrase of the instruction could be understood to mean the quotient method per se is impermissible. Reading the entire sentence, however, makes clear an agreement in

8

advance to be bound by an amount yet to be determined is impermissible. The instruction clearly prohibits this kind of agreement. It is possible the jury was confused by the first phrase, but clearly the jury reached a verdict. There is no showing this was done by the impermissible method of agreement to be bound by an undetermined amount. DeTiennes failed to show any prejudice or interference with their substantial rights by reason of the instruction. Unless an error affects the substantial rights of an appellant, judgment will not be reversed:

> On appeal, prejudice is never presumed, and a judgment will not be reversed merely because the lower court erred; in order to work a reversal, it must affirmatively appear that the error has affected substantial rights of defendant on the merits of the case. [Citations omitted.] It does not affirmatively appear from the record that defendant was prejudiced or that substantial rights were affected by reason of the error.

Conway v. Fabian (1939), 108 Mont. 287, 323-324, 89 P.2d 1022, 1037, cert. denied 308 U.S. 578, 60 S.Ct. 94, 84 L.Ed. 484.

Finally DeTiennes argue error because the court refused to give their instruction no. 10:

> You are instructed that in determining the amount of depreciation to the fair market value of the remainder to be paid by the State for the part of the Defendant's land not taken, you may consider inconvenience of use to the landowner resulting from the taking.

Ordinarily damages may be awarded only for injury done to the particular lot or tract of land for which the right-of-way strip is taken. In ascertaining the award to be made, the value of the acreage taken and the depreciation in value of the remainder of the particular tract is determined regardless of what other lands the owner may possess. Every

9

item of inconvenience need not be considered by the jury. Instruction no. 10 could mislead the jury into believing it could consider any inconvenience to use suffered by DeTiennes whether or not it affected the market value of the property on the day of the taking. This is not the law. The amount of compensation to be awarded, whether the property actually is taken or injuriously affected by the taking, must be based on the market value of the property at the time of the taking. Only when inconvenience results in a diminution of market value of the property is it compensated. Compensation can not be for inconvenience per se. The damage being compensated must be to the [value of the] property itself. Less v. City of Butte (1903), 28 Mont. 27, 33, 72 P. 140, 141.

The jury heard testimony on inconvenience and were properly instructed on the method to determine compensation. It concluded there was no diminution in the value of the property because of the location of the new highway, or because of any inconvenience resulting from its location. The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10

Mr. Justice Frank B. Morrison, Jr. dissents as follows:

I dissent in part and concur in part.

I specifically agree with the resolution of the issue on impeaching the jury verdict utilizing the volunteer statement of the foreman. The statement by the foreman indicating that the jury considered negligence presents an interesting question. By analogy, I believe the issue to be controlled by Johnson v. Super Save Markets, Inc. (1984), 686 P.2d 209, 41 St.Rep. 1495. In that case the jury returned a verdict for general damages in the amount of $17,000. However, the jurors voluntarily added a hand written list enumerating five separate elements of damage accounting for the total of $17,000. The itemization showed that the jury awarded damages for things which did not find support in the record. In refusing to impeach the verdict with the handwritten notations of the jurors, we said,

> . . . we are not compelled to impeach a verdict with considerations of the jury which are voluntarily offered just as we uniformly refuse to do so with the same information as elicited under oath through affidavits.

The statement of the foreman was a volunteer statement as the hand written notations in Johnson v. Super Save, supra, were. Therefore, I would hold that the foreman's statements should be disregarded.

I dissent from the holding in the majority opinion affirming the trial court ruling granting a motion in limine foreclosing consideration of sales under threat of condemnation. The majority opinion distinguishes between comparable sales utilized by an expert witness in arriving at market value and the admissibility of those sales to establish market value. I believe this is unnecessary "splitting of hairs." However, the motion in limine and the

10

ruling thereon, in this case, foreclose the consideration of such sales for any purpose. Such ruling runs contrary to the holding of this Court in State Highway Comm'n v. Voyich (1963), 142 Mont. 355, 384 P.2d 765. Justice Castles, in holding such sales admissible said:

> We are not called upon, nor do we rule, on the question of admissibility of sales to condemners to establish market price. We have set forth sufficient here, though, to establish that upon the objections raised by the State, as heretofore quoted, the District Court was not in error in allowing the evidence for the reason that the objection went to comparability of the lands, which comparability was shown.. . .

I believe that the holding of the Court in Voyich, supra, is clearly that sales made under threat of condemnation are comparable sales. If such sales constitute comparable sales they can be used by an appraiser in arriving at market value. It would also seem that they are directly admissible although the Court did not rule on that question.

Following the authority found in State Highway Comm'n v. Voyich, supra, I would hold that it was error to prohibit consideration of these "comparable sales" for any purpose whatsoever. Such a determination would require a new trial.

I would reverse and remand for a new trial in accordance with the views herein expressed.

_____
Justice

11