No. 12152

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

EDWARD T. CHARLIE,

Plaintiff and Appellant,

-vs-

HENRY FOOS,

Defendant and Respondent.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Robert Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Michael J. Whalen, argued, Billings, Montana.

For Respondent:

Anderson, Symmes, Forbes, Peete & Brown, Billings,
Montana.
Weymouth D. Symmes and John L. Hilts argued, Billings,
Montana.

---

Submitted: October 27, 1972

Decided: NOV 1 4 1972

Filed: NOV 1 4 1972

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment entered on a jury verdict for defendant in a personal injury action tried in the district court of the thirteenth judicial district, Yellowstone County, the Honorable Robert H. Wilson, presiding.

The material facts were disputed by the parties throughout the trial. However, we will recite them in a view which would correspond with the jury verdict and the prevailing party. Plaintiff Edward T. Charlie was in Laurel, Montana, on Saturday, May 2, 1970. He was traveling with one Peter Spotted Wolf and they were heading toward Wyoming, looking for work. While in Laurel, plaintiff went up to Henry Foos, defendant herein, and asked him if he had any work. Foos stated that he had no work as such, but that he did have some trees to trim and asked if plaintiff would be interested in that work. Plaintiff said he had done this type of work before and he would do it, but he would need the help of Peter Spotted Wolf.

The three parties then went out to Foos' ranch. Foos asked plaintiff how much he wanted for the work and plaintiff replied that $4 was all he wanted. They worked on the trees /for about an hour and then wanted to go to town to eat. Foos took them back to town and paid them $4 for the work they had done. At this time Foos thought the employment had ended, and he was through with them.

However, about 11 p.m. that same evening, plaintiff and Spotted Wolf came again to the home of Foos and got him out of bed. At this point Foos was afraid that he might have some trouble. Foos was 77 years old at the time. He had from $70 to $75 in the house. Plaintiff told Foos that he and Spotted Wolf wanted another $2, but did not say what for. Foos was frightened and gave them the dollar he had in his pocket. Plaintiff and Spotted Wolf went back into town, then returned, and slept in Foos' barn. Foos had no idea they were in the barn, as he had never told them they could sleep on his place.

The next morning, May 3, 1970, plaintiff and Spotted Wolf went to the Foos home and wanted something to eat. Because defendant plaintiff was still afraid, he fed them what he could for breakfast. He did not tell them to go back out to work in the trees; he thought the work was ended. Plaintiff and Spotted Wolf did go back to the trees and began trimming. While plaintiff was working in the tree, a limb buckled back and severed his right arm except for a small amount of skin and flesh.

Foos heard some yelling and upon coming out of his house saw plaintiff still up in the tree. Foos' son, Clarence, whose farm was only about 2 blocks away, heard the yelling and came over to assist one Les Bissonette in removing plaintiff from the tree. He was taken to a hospital, where it was found necessary to amputate plaintiff's arm.

The cause went to a jury trial and judgment was entered for defendant, Henry Foos. From that judgment and order denying a motion for a new trial, plaintiff, Edward T. Charlie, appeals.

Appellant alleges four errors by the district court.

First, that he was deprived of a fair trial by reason of misconduct on the part of the jury. This allegation is based on four affidavits by members of the jury and two affidavits by bailiffs in charge of the jury. Appellant contends when the jury was returned into court late on the night of April 29, 1971, it was at such an impasse that that it was no longer capable of arriving at a verdict from an impartial evaluation of the case. He contends the members of the jury were disappointed because they were not discharged, but were required to be put up for the night; and, in their desire for discharge, they returned a verdict of expediency when they were returned to the juryroom the following morning.

Appellant further contends the affidavits prove that one of the jurors made statements on voire dire examination, saying then that she would judge the case fairly. However, in the juryroom she made statements that she could not judge it fairly, that she knew defendant very well; and, that she should not be on the

jury. Another affidavit goes to show that one of the jurors was concerned about her young child at home and did not want to have to stay the night. This juror wanted the judge to appoint an alternate juror in her place.

With the jurors in this state of mind and apparently at an impasse, they returned in the morning and gave a judgment for defendant, Foos. This is the basis for appellant's contention that he did not receive a fair trial, due to misconduct on the part of the jury.

A review of the facts and case law leads this Court to find that, in fact, appellant did receive a fair trial under the jury system. Affidavits used by appellant are concerned solely with matters inherent in the jury process. It has been established that matters which are inherent in the jury process and not concerned with matters which relate to outside influence upon the jury, are not a basis for establishing a charge of jury misconduct. However, an examination of the cases shows a clear distinction between those cases and the position of appellant here. Cited in support of appellant's position is Putro v. Baker & Mannix Electric, 147 Mont. 139, 148, 410 P.2d 717, where this Court reversed a decision because of some misconduct on the part of the jury. In that case a newspaper article concerning the defendant and his criminal liability, was carried into the juryroom by a juror during a civil suit. It was established that all of the jurors had read the article before making a decision. The Court reversed because of the "contact of the jurors with outside, prejudicial influences".

Appellant also cites Goff v. Kinzle, 148 Mont. 61,66,67, 417 P.2d 105. It is true the Court did reverse that case on misconduct of a jury member, but again the situation is clearly not the same as here. There, the night before the case went to the jury the foreman went to the scene of the accident and investigated the area. He then went home and prepared a map which he took into the jury room. A new trial was granted on the grounds that

it was misconduct for the foreman to assume the role of inspector or investigator.

From the cases, our position has been that when the misconduct of a juror is based on some outside influence, then juror affidavits can be the basis for overturning the judgment. On the other hand, in Goff, it was said when there is nothing to demonstrate that there was any outside influence on the jury members:

> "'* * * the theory of our system is that the
> conclusions to be reached in a case will be
> induced only by evidence and argument in open
> court, and not by any outside influence, whether
> of private talk or public print'".

Here, in the record we find no evidence of any outside influence upon the jurors.

In Goff, this Court cited Kincaid v. Wade, 196 Kan. 174, 410 P.2d 333, 337, and we adhere to the position of the Kansas court when it stated:

> "'The general rule is, that affidavits of jurors are
> admissible to explain and uphold their verdict, but
> not to impeach and overthrow it.  But this general
> rule is subject to this qualification: that affidavits
> of jurors may be received, for the purpose of avoiding
> a verdict, to show any matter occurring during a trial,
> or in the juryroom, which does not essentially inhere
> in the verdict itself, as that a juror was improperly
> approached by a party, his agent or attorney, that the
> verdict was determined by lot; but not to show any matter
> which does essentially inhere in the verdict, as that
> the juror did not assent to the verdict, that he mis-
> understood the instructions or the testimony, or any
> other matter resting alone in the juror's breast.'"

The use of the affidavits by appellant is not proper on these facts.  He is trying to reverse a decision by juror affidavits, which were based on matters solely within the province of the jury.

Second, appellant alleges the verdict was contrary to the law and evidence in the case, and should have been set aside. He bases this allegation on affidavits of the foreman of the jury.  The foreman recited the jurors voted eleven to one to find that there was no negligence on the part of the employer, and inherent in this statement is the fact that one of the jurors who ultimately supported the verdict for the employer,

took the position that there was no negligence on appellant's part. The foreman conducted a vote on the question of contributory negligence alone, and eight of the jurors voted in the affirmative on that question, which enabled them to return a verdict for the employer. Of necessity, these eight jurors had to include the one juror who had previously taken a position that there was no negligence upon the part of the employer. Contributory negligence presupposes negligence upon the part of the other party.

Appellant also contends the verdict is contrary to the evidence. He contends the change of the vote of juror, Verne G. Partridge, came about by reason of the fact he was persuaded that the injured workman should have used the rope that was available to him. Yet, the evidence establishes that the rope was not there as a safety device, but used to pull limbs away from the house. In order for the juror to find as he did, he would have had to find that the workman was not a trespasser at the time he was injured and, as a matter of fact, find he was not furnished adequate equipment to do the work. To appellant it is clear the juror did not understand the evidence and this should be cause for a new trial.

The basis of appellant's argument is that the jurors did not understand the law of negligence and contributory negligence and did not clearly understand the facts. Therefore, appellant did not have a fair trial. This issue has been answered by both the federal court and this Court. The Ninth Circuit Court in upholding the Montana Federal District Court, in Bateman v. Donovan, 131 F.2d 759, 765, refused to grant a new trial, stating:

> "'* * * the general rule is, that affidavits of jurors will not be received to prove any mistake of the evidence or misapprehension of the law, on the part of the jury. * * * The verdict, in which they all concur, must be the best evidence of their belief, both as to the fact and the law, and therefore must be taken to be conclusive * * *.'"

This Court in 1969, reaffirmed that rule in Johnson v. Green, 153 Mont. 251, 255, 456 P.2d 290:

"But we go one step further. The rule in Montana
is that a jury may not impeach its own verdict
based on mistake of the evidence or misapprehen-
sion of the law."

Appellant would have us overrule this rule by his argument,
but nothing has been demonstrated by appellant to show that we
should. It is our view that it will remain the law of Montana,
and appellant's contention fails.

Third, appellant contends he was prejudiced by respondent's
improper appeal to the jury. During the testimony of respondent,
he stated he had worked in Laurel constructing the Masonic Temple.
With respect to his work in those early years, he stated:

"I don't know if he is related to this one or not,
but I shouldn't talk about it. Mr. Brevins, his
father, I and him got down there and worked together
in the basement."

Respondent was referring to a member of the jury and was immediately
told by his counsel that he should not volunteer anything. At
this point, counsel for appellant objected "to this line of
questioning for the reason that we are not concerned with any
issue in this case as to the working capacity or the work history
particularly of this witness".

Appellant now contends that this mentioning by the respondent
of the relationship between the juror and someone he knew, served
to arouse passion and prejudice of the jury against appellant.

We cannot agree with this contention for these reasons:
We do not believe that this was an attempt by respondent to
influence the jury or prejudice the appellant. It was a situation
of a 77 year old man, who did not clearly understand the language,
trying to answer the questions as best he could. He stated that
he was not sure that the member of the jury was even related to
the man he had worked with many years ago. This type of remark,
of course, is not proper in a trial, but a close examination
of the record does not show the remark in any way prejudiced the
jury against appellant.

Additionally, even though we find the remark did not arouse
prejudice of the jury against appellant, it appears from the

- 7 -

record that counsel for appellant did not make proper or timely objection. At the time the statement was made, counsel objected on the grounds that this work history of respondent had no relevance to the issues at hand.

We have held that if a party fails to make a timely objection to the irregularity, then the irregularity is waived. Herren v. Hawks, 139 Mont. 440, 365 P.2d 641. It is true an objection was made, but it was not the proper objection. In Hayward v. Richardson Const.Co., 136 Mont. 241, 249, 347 P.2d 475, this Court said:

> "At some stage of the case, plaintiff must object to the improper matter going before the jury as being calculated to excite prejudice before he is in a position to complain. In other words, plaintiff must obtain an adverse ruling by the court on the point before he is in a position to contend that the court committed some error."

During trial, counsel for appellant did not make the same objection he now brings forth on appeal. He did not put the trial court in error by a timely and proper objection as to prejudice. Counsel is therefore barred from claiming error here.

The fourth and final issue on appeal concerns instructions given by the trial court.

Appellant offered instructions numbered 18, 19, 20 and 21 covering the duties of an employer to his employees. In place of those offered instructions, the court gave its instruction No. 13:

> "A duty is imposed upon an employer to furnish a reasonably safe place to work to his employees and to furnish reasonably safe tools and appliances for the purpose of performing the work. Reasonably safe tools and appliances are such tools and appliances as are adapted to and are reasonably safe for use for the particular purpose for which they are furnished. This is a duty which the employer may not delegate and thereby relieve himself from performance of the duty. The duty thus imposed is what a reasonably prudent employer under the same or similar circumstances would have done."

Appellant argues that his four proposed instructions should have been given, and that the final sentence of court's instruction No. 13 would allow the jury to decide in favor of the employer if he were abiding by the general custom in the community, even

though the standards do not meet the requirements of the law. We do not agree that appellant's offered instructions should have been given, or that the court's instruction was wrong.

Appellant's offered instruction No. 18 read:

"No employer shall maintain or operate, or cause to be maintained or operated, any place of employment that is not safe, nor shall said employer fail or neglect to do anything reasonably necessary to protect the life and safety of the employees."

This instruction is based on section 41-1710, R.C.M. 1947. We believe the intent of the instruction, requiring that an employer furnish a safe place to work is satisfied in the court's instruction No. 13.

Proposed instruction No. 19 read:

"'Reasonably safe place to work' means that the place of employment has been made as free from danger to the life or safety of the employee as the nature of the employment will reasonably permit."

This instruction did not take into account the fact that the standard of care required of the respondent would be that of an ordinarily prudent person under the same or similar circumstances.

Proposed instruction No. 20 read:

"'Reasonably safe tools and appliances' are such tools and appliances as are adapted to and are reasonably safe for use for the particular purpose for which they are funished."

This instruction, besides being covered by the court's instruction, was not applicable because there was no evidence in the record that appellant was furnished any tools that were not reasonably safe.

Proposed instruction No. 21 read:

"The duty imposed upon an employer to furnish and use safety devices and safeguards and adopt and use methods and processes reasonably adequate to render the place of employment safe, and to do every other thing reasonably necessary to protect the life and safety of employees, is a duty which the employer may not delegate to someone else and thereby exonerates himself from non performance of the duty, or in other words the law imposes upon the employer the absolute responsibility to perform the duty so imposed."

- 9 -

This instruction would impose absolute responsibility on the respondent which disregarded the reasonably prudent person rule. This instruction along with the other three representing the essential ideas that appellant wanted expressed, were given to the jury in the court's instruction No. 13. We do not find any error on the part of the trial court in not granting appellant's proposed instructions 18, 19, 20 and 21.

Appellant argues that court's instruction No. 13 would allow the jury to find that if respondent was following the general custom in the community there would be no liability. First, there was no evidence concerning any general custom in the community. Second the instruction makes absolutely no reference to custom or usage in any respect. We cannot agree with appellent on this issue.

Appellant contends the district court erred in giving its instruction No. 14:

> "You are instructed that if you find that the plaintiff was working on the tree involved in this case without the express or implied consent of the defendant at the time this accident occurred, the plaintiff was in law a trespasser. The only duty owed by the defendant to him under such circumstances was to refrain from willful or wanton acts of misconduct."

Appellant submits that considering the evidence as a whole, as a matter of law, the court should have determined that the status of the injured workman was not that of a trespasser. This instruction allowed the jury to consider whether or not appellant was a trespasser at the time of his injury, and a fair evaluation of the facts would justify that this instruction should not have been given.

The rule is established in Montana that whenever the facts are in dispute, as here, as to whether or not appellant was a trespasser, they should be resolved by the jury. This Court stated in Maxwell v. Maxwell, 140 Mont. 59, 61, 367 P.2d 308:

> "The rule is well established that a question will not be taken from the jury, as the trier of facts, where there is conflicting evidence or where more than one conclusion can be drawn from the evidence."

From the record, it certainly appears that there was a very genuine question of fact concerning the status of appellant on the morning of the accident. Respondent testified appellant was not hired, and was not to be doing any work. Appellant testified he was still working for respondent and was being told what to do. This is certainly a question for the jury and the court did not err in leaving the determination of the status of appellant to the jury.

A careful review of the issues raised by appellant indicate the trial court did not commit error during the trial or in denying a motion for a new trial.

Accordingly, the verdict of the trial court is affirmed.

Wesley Castles

Associate Justice

We Concur:

James T. Harrison
Chief Justice

John Conway Harrison

Gen S. Daly

Wade J. Harwood
Associate Justices.