No. 81-412

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

MICHAEL ALAN DICKENS,

        Defendant and Appellant.

Appeal from:  District Court of the Eighth Judicial District,
In and for the County of Cascade, The Honorable
John M. McCarvel, Judge presiding.

Counsel of Record:

    For Appellant:

        Michael S. Smartt, Great Falls, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena,
        Montana
        J. Fred Bourdeau, County Attorney, Great Falls,
        Montana

Submitted on Briefs:  March 5, 1982

Decided:  June 24, 1982

Filed:  JUN 24 1982

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Michael Alan Dickens (hereinafter referred to as appellant) was charged before the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, with the crime of aggravated kidnapping, a felony, and of sexual intercourse without consent, a felony. A jury trial was held on April 28, 1981, and after four days of trial, the jury returned guilty verdicts on both counts.

On June 3, 1981, the court sentenced appellant to twenty years for the crime of sexual intercourse without consent; for the use of a dangerous weapon, he was given an additional (consecutive) ten years; and, for the crime of aggravated kidnapping, he was sentenced to thirty years (to be served concurrently) of confinement in the Montana State Prison. Appellant was found to be a nondangerous offender for parole eligibility purposes.

Appellant's motion for a new trial was denied, and this appeal followed.

On New Year's Eve, 1980, the victim, according to her testimony, was abducted at knife point from a city street in Great Falls, Montana, and forced into appellant's vehicle. She was then taken to an area near Giant Springs where the appellant forced her, at knife point, to engage in various sexual acts including sexual intercourse. After the acts had been completed, he pulled her from the vehicle and gave her a choice of either being knifed or thrown over the nearby cliffs into the river. A struggle ensued, and the victim managed to escape the appellant by kicking him in the groin. Though naked except for her socks, she managed to

make her way to Malmstrom Air Force Base about two miles away. Soon thereafter, she was rescued by base security personnel.

The sheriff's department was notified, and the victim was taken to a local hospital for treatment. At the hospital she was examined by a Dr. Miller, who discovered, and later testified, that there was motil semen in her vagina and an abrasion on the labial area of her vaginal opening.

Within several days the victim had identified the appellant from a photograph and at an informal lineup identification.

In contrast, the appellant testified that he picked up the victim who was hitchhiking. He testified that she made advances towards him and suggested they go to Giant Springs "to bring in the New Year." Appellant testified that they went to Giant Springs, parked, got in the backseat of his car and had a sexual encounter, including sexual intercourse. Thereafter, according to appellant's testimony, the victim became upset, got out of the car and ran off. Appellant testified that her conduct angered him and that after waiting a short time he drove off.

The State presented numerous witnesses who testified about certain circumstances surrounding the incident. The most damaging testimony to appellant's defense was the testimony of his roommate and the medical testimony of Dr. Miller. The appellant's roommate testified that on the date following the attack the appellant stated he had abducted a woman the night before, had taken her to Giant Springs and had threatened to rape her or throw her over the cliffs.

-3-

Dr. Miller, a specialist in obstetrics and gynecology, who also had done approximately fifty examinations of rape victims over a ten-year period, was allowed to testify that from his clinical observations, the victim had been raped.

Appellant raises numerous issues of error on appeal and these can be summarized as follows:

1. Was the appellant denied his right to a fair trial?

2. Was there sufficient jury misconduct present to warrant a reversal?

3. Was the trial court committing reversible error when it allowed the physician to voice an opinion as to the ultimate issue?

4. Was the appellant denied a fair trial because the State refused to stipulate?

Appellant contends that he was denied his right to a fair trial because the trial court made an improper comment on the evidence; impaired the cross-examination of a key prosecution witness; displayed a nonjudicial attitude toward defense counsel; and, improperly restricted the length of closing argument. These contentions are not supported by the record or by the law.

The alleged improper comments by the trial court occurred when, during direct examination of one of appellant's witnesses, the court stated that, "all this line of testimony is irrelevant," and, "[i]t's about time" when the prosecution objected. First, there is no indication in the record of the court ever stating, "[i]t's about time." Counsel refers to a page in the transcript where the remark is alleged to have occurred, but it is counsel's own remark.

-4-

Second, when the court stated, "all this line of testimony is irrelevant," it was ruling on a line of testimony that was indeed irrelevant. Appellant's counsel was asking a witness, that had had sexual relations with appellant in the past, whether other women became upset with appellant because he failed to carry on relationships with them. This was clearly an improper line of questioning. Rule 402, Mont.R.Evid.; Rule 602, Mont.R.Evid. Further, the "comment" was harmless error and does not provide sufficient grounds for a reversal. State v. Bier (1979), ___ Mont. ___, 591 P.2d 1115, 36 St.Rep. 466; State v. LaMere (1980), ___ Mont. ___, 621 P.2d 462, 37 St.Rep. 1936.

Appellant contends that the court impaired the cross-examination of a key prosecution witness by interrupting counsel on several occasions. A review of the record reveals that the "interruptions" were merely actions by the trial court to keep the trial running smoothly and to prevent counsel from engaging in frequent sojourns into side issues. The court has a duty to conduct the trial in a speedy and fair manner and has a great amount of discretion in so doing. State v. LaMere, supra; State v. Pippi (1921), 59 Mont. 116, 123, 195 P. 556, 558-559.

It is argued by appellant that the trial court displayed a nonjudicial attitude toward defense counsel. This attitude is alleged to have displayed itself during several instances, beginning with voir dire and ending with the trial court's ordering defense counsel to return to the defense table during examination of the appellant. Again, the record does not support the contentions.

It was stated in State v. Cassil (1924), 70 Mont.

433, 452, 227 P. 49, 57:

> "It will not serve any useful purpose to enter into a particular discussion of these alleged errors. In view of the conclusion reached with respect thereto, of the correctness of which we have no doubt whatever, we shall content ourselves with saying that while we do not approve of any of the comments or remarks made by the judge, which are complained of, we do not find that any of them, or all of them considered together, worked prejudice to any substantial rights of the defendants, or probably could have done so."

Here, as in Cassil, there exists no basis for concluding that the right of appellant to a fair trial was in any way denied or impeded by the action of the trial court. See also: State v. McKenzie (1980), ____ Mont. ____, 608 P.2d 428, 458, 37 St.Rep. 325; State v. Metcalf (1969), 153 Mont. 369, 376-377, 457 P.2d 453; State v. Pokini (Haw. 1974), 526 P.2d 94, 101.

Appellant also contends that his right to a fair trial was affected when the court limited the time for his closing argument to one-half hour. While it is true that the trial court informed defense counsel that he would only allow thirty minutes to conclude his closing argument, it is also true that defense counsel had already been talking for one hour and seven minutes. The trial court did not abuse its discretion by limiting counsel to a closing argument that was one hour and thirty-seven minutes long. State v. LaMere, supra.

The second major issue raised by the appellant concerns certain allegations of jury misconduct. This alleged misconduct occurred in two forms: first, there was a possibility that several jurors may have briefly conversed with prosecution witnesses; second, the bailiff's statements

-6-

to the jurors.  A review of the record and applicable case law reveals that no reversible error took place.

The first instance of alleged misconduct took place, according to the appellant, during the trial when several members of the jury were seen, by several of appellant's witnesses, facing some of the prosecution's witnesses and moving their mouths.  It is not clear from the record whether any conversation was actually heard, but the appellant's witnesses did testify during the motion for a new trial that it "appeared" some communication took place.

If there had indeed been communications of an improper nature between several of the jurors and some of the prosecution's witnesses during the trial, defense counsel had an obligation at that time to inform the court of the matter.  Disciplinary Rule 7-108(F), Montana Code of Professional Responsibility.  Further, this type of communication, a possibility at best, is not sufficient reversible error.  In Turner v. Louisiana (1965), 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, a case cited as controlling on this issue by appellant, the United States Supreme Court held that a verdict can be reversed if it can be shown that communications of a dubious nature takes place between prosecution witnesses and jurors.  A review of the facts in Turner reveals that what consisted of reversible error there is a far cry from what transpired in the present case. In Turner, the two key prosecution witnesses were deputy sheriffs who were also in charge of the jurors.  The Court noted:

> ". . . We deal here not with a brief encounter, but with a continuous and intimate association throughout a three-day trial--an association which gave these witnesses an

opportunity, as Simmons (one of the deputies) put it, to renew old friendships and make new acquaintances among the members of the jury." 85 St.Ct. at 550.

There is a distinction drawn by the United States Supreme Court between a "brief encounter" and an "intimate association" and that distinction is applicable here. At best, the record reflects some innocuous type of conversation. Appellant did not inform the court when the instances took place and did not complain until the verdict was entered; nor was there any attempt to submit affidavits from jurors. There was, quite simply, not enough evidence presented by appellant to warrant a new trial. Charlie v. Foos (1972), 160 Mont. 403, 503 P.2d 538.

The second occurrence of alleged misconduct transpired when the bailiff informed the jury that he was having some problems finding them a place to stay overnight. However, the record reveals that the bailiff informed the jurors shortly thereafter that he had procured them rooms. Also, the record shows that the jurors informed the bailiff that despite the hour, it was after 1:00 a.m., they did not want to break but instead wanted to continue deliberating. It cannot be seen where any type of prejudice resulted to the appellant from the bailiff's conduct.

It is further contended by the appellant that the trial court committed reversible error when it allowed the physician to testify as to the ultimate issue. The testimony in question was as follows:

"Q. [Prosecution] Did you perform any type of clinical impression of this woman? A. [Physician] My overall impression was that she was raped."

Appellant argues that this testimony is inadmissible because

-8-

it goes to the ultimate issue of whether or not the prosecutrix was raped and is, therefore, in violation of Rules 702, 704 and 705, Mont.R.Evid.

This Court reviewed a similar issue in a recent case. In State v. Howard (1981), ____ Mont. ____, 637 P.2d 15, 38 St.Rep. 1980, we held:

> "Under Rule 704 the testimony must be 'otherwise admissible.' The admissibility of expert testimony is governed by Rule 702, Montana Rules of Evidence:
>
> "'If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.'
>
> "According to this rule, Dr. Elliott was clearly qualified to testify as to the nature and extent of the victim's injuries. Whether he could then extrapolate from this data and give an opinion is determined by whether the opinion would assist the trier of fact. Stated another way, the test is:
>
> "'. . . whether the subject is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness, or whether the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' State v. Campbell (1965), 146 Mont. 251, 258, 405 P.2d 978, 983.
>
> "Dr. Elliott inferred from the nature of the injuries that the person who inflicted them did so with an intent to murder. We find that under the circumstances of this case, the jury was as qualified as the doctor to draw an inference from the circumstantial evidence as to intent, and therefore the doctor's opinion on intent was inadmissible under Rule 702, Montana Rules of Evidence.
>
> "We further find that, for a number of reasons, the error was harmless under both the Montana and the federal constitutional tests. Montana statutes provide that no cause of action shall be reversed by reason of any error committed by the trial court unless the record shows that the error was prejudicial, section 46-20-701, MCA; and that any error

which does not affect substantial rights shall be disregarded, section 46-20-702, MCA. The federal constitutional test for harmless error is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction, Fahy v. Connecticut (1963), 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171; or whether the reviewing court can declare a belief that the error was harmless beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705." 637 P.2d at 17-18.

The circumstances in this case are indeed quite similar to those presented in Howard, with one important difference. The physician in Howard was asked to give an opinion as to the intent of the defendant. Here, the physician was merely asked to give his "clinical impression" of the victim based upon his experience as a specialist in obstetrics, gynecology and as an expert that has done approximately fifty examinations of rape victims. There is a definite difference in the content of the testimony. In this case, intent was not part of the question, so the physician could properly testify as to his clinical impression and give an opinion based upon his varied experience and firsthand observation. Further, as in Howard, the testimony was not prejudicial and was therefore not sufficient to constitute reversible error.

The final contention of the appellant is that he was denied a fair trial because the prosecution refused to stipulate, and, therefore, there was an improper admission of prejudicial evidence. He contends that because he admitted to numerous facts the prosecution was barred from presenting any evidence concerning those admitted facts.

The prosecution was under no duty to stipulate, and no error resulted from its refusal to do so. State v. Adler

(1976), 16 Wash.App. 459, 558 P.2d 817, 821.   In State v.

Wilson (1974), 215 Kan. 28, 523 P.2d 337, the Kansas Supreme

Court stated:

> ". . . it is an established rule of law that
> an admission by a defendant does not prevent
> the state from presenting separate and inde-
> pendent proof of the fact admitted.   (Bizup
> v. People, 150 Colo. 214, 371 P.2d 786, cert.
> den. 371 U.S. 873, 83 S.Ct. 114, 9 L.Ed.2d
> 112; and Parr v. United States [5th Cir.
> 1958], 255 F.2d 86, cert. den. 358 U.S. 824,
> 79 S.Ct. 40, 3 L.Ed.2d 64.)
>
> "The prevailing rule in this regard is stated
> in Wharton's Criminal Evidence [12th Ed. 1972
> Cumulative Supp.], Confessions and Admis-
> sions, § 399:
>
> "'The making of an admission by the defendant
> does not bar the prosecution from proving the
> fact independently thereof as though no
> admission had been made, particularly since
> facts when voluntarily admitted often lose
> much of their probative force in the eyes of
> the jury.' (p. 63.)
>
> "To the same effect the rule is stated in 31A
> C.J.S. Evidence § 299:
>
> "'A party is not required to accept a judi-
> cial admission of his adversary, but may
> insist on proving the fact.' (p. 766.)
>
> "In the recent criminal case of Arrington v.
> State (Fla. 1970), 233 So.2d 634, the Supreme
> Court of Florida pointed out that an offer to
> stipulate remains merely an offer unless
> accepted by the prosecution.   The Florida
> court declared its position on the subject by
> adopting language quoted from The People v.
> Speck, 41 Ill.2d 177, 242 N.E.2d 208, as fol-
> lows:
>
> "'It has never been held that the state is
> barred from proving a fact because the
> defendant offers to admit it, but, on the
> contrary, the rule is that when a trial is
> upon a plea of not guilty, the state is
> permitted to go ahead and introduce its full
> proof of the crime charged in the
> indictment.' (233 So.2d pp. 636, 637.)
>
> "See, also, The People v. Scheck, 356 Ill.
> 56, 190 N.E. 108, 91 A.L.R. 1472, and 73
> Am.Jur.2d, Stipulations, § 18, p. 557." 523
> P.2d at 341.

-11-

Also, the California Supreme Court held in People v. McClellan (1969), 80 Cal.Rptr. 31, 457 P.2d 871:

> "Second, there is a strong policy against depriving the state's cause of its persuasiveness and forcefulness by forcing the prosecutor to accept stipulations that soften the impact of the evidence in its entirety. 'Parties, as a general rule, are entitled to prove the essential facts--to present to the jury a picture of the events relied on.' (53 Am.Jur., § 105.) In People v. Pollock, 25 Cal.App.2d 440, 77 P.2d 885, the court held that the district attorney in a rape case was not obligated to accept the defendant's offer to stipulate that there had been intercourse. 'Except as ordained by law, the district attorney, in connection with the performance of an official act, is not required to accept the judgment of a stranger to the office.' (Id. at p. 444, 77 P.2d at p. 887.)" 457 P.2d at 877.

We find no grounds for reversal in any of appellant's contentions; therefore, the judgment is affirmed.

_____
                Justice

We concur:

_____

_____

_____
     Justices

Mr. Justice Frank B. Morrison, Jr., concurring:

I concur in the result but not in everything that is said.

The majority opinion treats the issue of whether expert testimony on "rape" was proper. Reliance is placed upon State v. Howard (1981), ____ Mont. ____, 637 P.2d 15, 38 St.Rep. 1980. In my opinion Howard is clearly distinguishable.

The court in Howard found it was error for a physician to give the following testimony:

> "A. Well, yeah, I have an opinion. I think that somebody tried to murder her. You know, I just can't believe that you can sustain that much trauma with any other intent."

This testimony was found to be harmless error in light of the fact that:

(1) The jury did not rely on the doctor's opinion because it returned a verdict finding defendant guilty of aggravated assault and kidnapping rather than guilty of attempted deliberate homicide.

(2) The evidence was overwhelming that the defendant purposefully or knowingly inflcited bodily injury on the victim with a weapon.

In the case now before the Court, the issue was whether defendant's sexual intercourse with the victim was had with consent. The jury resolved that issue contrary to defendant's position. The testimony here in question was as follows:

> "Q. [Prosecution] Did you perform any type of clinical impression of this woman?
>
> "A. [Physician] My overall impression was that she was raped."

The answer here given could have influenced the jury's verdict since the answer is consistent with the guilty finding of the jury. Therefore, this case is distinguishable

-13-

from Howard where the expert witness testified that the assailant intended to murder the victim but the jury aquitted on that charge.

Under the state of the record before us I would affirm but not rely upon Howard. The only objection made to the answer here given was that the testimony went to the ultimate issue of fact. Under Rule 704, Montana Rules of Evidence, testimony in the form of an opinion is not objectionable because it embraces an ultimate issue.

The answer here was not responsive to the question asked. Furthermore, the answer appears to be vague. If proper foundation is laid, a physician may express an opinion about whether force was used to accomplish penetration. The physician could not give an opinion about the mental state of the defendant having never conducted an examination of the defendant, nor having any other adequate foundation to draw such a conclusion. Neither could the physician make legal conclusions. The physician's use of the word "raped" is somewhat unclear in that he may only have been giving a medical diagnosis or, on the other hand, he may have been drawing legal conclusions and conjecturing about the state of defendant's mind. The former is permissible. The latter is not.

The objection made was not sustainable. The answer given is unresponsive and vague. However, I do not feel that the answer is sufficiently prejudicial to require a new trial. Therefore, I concur in affirming the verdict.

Justice

-14-