No. 86-581

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

STATE OF MONTANA,

       Plaintiff and Respondent,

-vs-

JAMES NEIL HEDRICK,

       Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Billy B. Miller, Great Falls, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Kimberly Kradolfer, Asst. Atty. General, Helena
        Patrick L. Paul, County Attorney, Great Falls, Montana

Submitted on Briefs: Aug. 27, 1987

Decided: November 10, 1987

Filed: NOV 10 1987

_Ethel M. Harrison_
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Defendant James Neil Hedrick was convicted of the separate offenses of sexual assault, § 45-5-502, MCA, and deviate sexual conduct, § 45-5-505, MCA. Defendant appeals these convictions. We affirm.

The issues on appeal are:

1. Did the District Court err in failing to grant defendant's motion for mistrial based upon jury misconduct?

2. Did the District Court err in failing to grant defendant's motion for mistrial based upon tainted identification evidence?

3. Did the District Court err in failing to grant defendant's motion for dismissal pursuant to § 46-16-403, MCA, based upon insufficient identification evidence?

On August 8, 1985, the defendant, James Neil Hedrick pled not guilty to the felony counts of sexual assault and deviate sexual conduct. On May 6, 1986, a Cascade County jury found the defendant guilty of the separate offenses involving two victims.

The 5 year old victim of the sexual assault was assaulted while visiting the home of her grandparents on June 16, 1985. The defendant was also visiting the grandparents' home. At trial the victim was unable to identify the defendant as the person who assaulted her, she did testify that "Jim" had assaulted her. Both the victim's mother and grandmother identified the defendant as the Jim that was visiting that afternoon.

The 6 year old victim of the deviate sexual conduct, his brother, age 5, and another child, age 11, (hereinafter witness) were approached on July 14, 1985 by a man named Jim who offered to buy them pop and candy while in the park. The

2

victim testified that the man named Jim took him to a wooded area and there engaged in the deviate sexual conduct. On July 26, 1985 officer Robert Dykeman of the Great Falls Police Department conducted a photographic lineup. Both the victim and his brother identified the defendant, James Neil Hedrick, as the perpetrator of the crime. At trial, the victim, his brother and the witness could not identify the defendant as the man in the park. After testifying, the victim and his brother found their mother in the hallway. Their mother testified that the children could, but were too frightened to identify the defendant. She testified that she told the victim that it was very important for him to identify the defendant. The victim once again took the stand and positively identified the defendant.

The defense moved for a mistrial on the grounds that the victim's identification of the defendant was so tainted as to deny the defendant due process. The court allowed the victim's mother to testify and allowed the defense an opportunity to cross-examine her. During the subsequent hearing on the motion the defendant asserted that he saw some jurors talking to the victim and his brother.

The court denied the motion for mistrial holding that the conversation between the victim and his mother was a matter of witness credibility. Subsequent defense motions on the grounds of jury misconduct and insufficient evidence of identification were also denied.

The standard of review for overturning a district court's ruling on a mistrial was stated in State v. Counts (Mont. 1984), 679 P.2d 1245, 1248, 41 St.Rep. 681, 686, quoting Schmoyer v. Bourdeaux (1966), 148 Mont. 340, 343, 420 P.2d 316, 317-18, "We hold that once the District Court has considered the matter, however it is raised, whether on a question for mistrial or motion for a new trial this Court

will not lightly disturb that ruling. To overthrow it this court must be shown by evidence that is clear, convincing, and practically free from doubt, of the error of the trial court's ruling." In order to overturn the District Court's denial of the mistrial motion based upon jury misconduct the defense must produce clear and convincing evidence that the District Court erred in denying the mistrial motion.

The only evidence of jury misconduct is the defendant's statement that he saw some jurors talking to the victim and his brother. This evidence does not meet the standard set in State v. Dickens (1982), 198 Mont. 482, 647 P.2d 338 for demonstrating prejudice to the defendant. The facts in Dickens are similar to the facts of this case. In Dickens, evidence existed that there was communication between a witness and a juror, but no evidence demonstrated any prejudice to the defendant:

> The first instance of alleged misconduct took place, according to the appellant, during the trial when several members of the jury were seen, by several of appellant's witnesses facing some of the prosecution's witnesses and moving their mouths. It is not clear from the record whether any conversation was actually heard, but the appellant's witnesses did testify during the motion for a new trial that it 'appeared' some communication took place. . . . [T]his type of communication, a possibility at best, is not sufficient reversible error. In Turner v. Louisiana (1965), 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, a case cited as controlling on this issue by appellant, the United States Supreme Court held that a verdict can be reversed if it can be shown that communications of a dubious nature takes [sic] place between prosecution witnesses and jurors. A review of the facts in Turner reveals that what consisted of reversible error there is a far cry from what transpired in the present case. In Turner, the two key prosecution witnesses were deputy sheriffs who were also in charge of the jurors. The Court noted:

4

> '. . . We deal here not with a brief encounter, but with a continuous and intimate association throughout a three-day trial--an association which gave these witnesses an opportunity, as Simmons (one of the deputies) put it, to renew old friendships and make new acquaintances among the members of the jury.' 85 S.Ct. at 550.
> There is a distinction drawn by the United States Supreme Court between a 'brief encounter' and an 'intimate association' and that distinction is applicable here. At best, the record reflects some innocuous type of conversation . . . There was, quite simply, not enough evidence presented by appellant to warrant a new trial. Charlie v. Foos (1972), 160 Mont. 403, 503 P.2d 538.

Dickens, 647 P.2d at 341-42. The defendant cannot produce any evidence that he was prejudiced or that the contact between the jurors and the victim and his brother was anything more than a brief, innocuous encounter. There is no evidence to warrant a mistrial based upon jury misconduct, thus the District Court did not err when it refused to grant a mistrial.

The defense claims that the District Court erred when it allowed the victim of the deviate sexual conduct to identify the defendant after speaking with his mother. The defense moved for mistrial on the grounds that the evidence was so tainted as to deny the defendant due process. The same standard of review for the District Court's refusal to grant a mistrial in the previous issue applies here. The defense must demonstrate clear and convincing evidence that the identification techniques, the victim's encounter with his mother and subsequent testimony, produced a substantial likelihood of irreparable misidentification. State v. Bauer, (Mont. 1986), 683 P.2d 946, 41 St.Rep. 1066. The District Court held that the incident went to the weight of the evidence and was best left to the determination of the jury.

5

The defendant's remedy for questionable identification techniques is cross-examination. The identification technique must be flagrantly suggestive before evidence is suppressed. This Court stated in State v. Miner (1976), 169 Mont 260, 266, 546 P.2d 252, 256, "Therefore, unless the error is obvious and the prejudice clear, the defendant's remedy is in effective cross-examination with the identification question then becoming one of weight to be determined by the jury and not one of admissibility." Neither the error nor the prejudice is obvious here. The defense was given the opportunity to cross-examine both the victim and his mother. It is quite possible that the victim could, but was afraid to identify the defendant and that his mother merely stressed the importance of identifying the perpetrator and urged the child to set aside his fears. The jury was free to believe the testimony to this effect.

The independent basis for the victim's in court identification also prevents the possibility of a substantial likelihood of irreparable misidentification. The criteria for evaluating the likelihood of misidentification are:

> (1) opportunity of the witnesses to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

Bauer, 683 P.2d at 949. The victim in this case had the opportunity to view the defendant and surely was attentive. The victim also successfully identified the defendant 12 days after the incident from a photographic lineup.

With the opportunity to cross-examine both the victim and his mother and satisfaction of many of the Bauer criteria the District Court did not err when it refused to grant a

6

mistrial and held that the identification question was a matter of weight to be determined by the jury.

The defense also asserts that it was error for the District Court to deny the defense's motion for dismissal pursuant to § 46-16-403, MCA, based upon the failure of the state to prove the essential elements of the crime by failing to produce a witness who could identify the defendant. This Court will disturb a district court's ruling on a motion to dismiss only upon a showing of abuse of discretion. State v. Goltz (1982), 197 Mont. 361, 642 P.2d 1079. The standard for granting a directed verdict of acquittal was articulated in State v. Yoss (1965), 146 Mont. 508, 514, 409 P.2d 452, 455, "A directed verdict in a criminal case in this jurisdiction is given only where the State fails to prove its case and there is no evidence upon which a jury could base its verdict." The State presented the testimony highlighted in the facts of this opinion that linked the defendant to both the sexual assault and the deviate sexual conduct. The trial court did not abuse its discretion when it refused to grant the defendant's motion to dismiss.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

7

_____

_____

Justices

8