No. 88-62

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

KELLY SALOIS,

        Defendant and Appellant.

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Benjamin R. Anciaux, Polson, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Dorothy McCarter, Asst. Atty. General, Helena
        Larry J. Nistler, County Attorney, Polson, Montana
        Mark Stermitz, Deputy County Atty., Polson, Montana

Submitted on Briefs: Dec. 2, 1988

Decided: December 30, 1988

Filed:

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant Kelly Salois appeals from a jury verdict in the Twentieth Judicial District, Lake County, Montana. Salois was convicted of criminal possession of dangerous drugs and criminal possession of drug paraphernalia, both misdemeanors. We affirm.

In June, 1987, Lake County Sheriffs' officers made a lawful search of the residence of Phillip Shourds. When the officers entered Shourds' house, they detected the strong arouma of marijuana smoke. Salois was present in the house, along with seven or eight other people. The officers allowed five of these people to leave, including Salois. The officers then proceeded to search the house.

The officers discovered marijuana or drug paraphernalia in nearly every room of Shourds' house. In the master bedroom, 71 bags of marijuana, totaling nearly 275 grams, were found on the floor between the bed and wall. In the master bedroom closet, officers found a 423 gram "block" of marijuana. In the living room, officers found marijuana, stems, seeds, cigarette butts (roaches), and rolling papers. In the kitchen, officers found rolling papers, "roach clips," and marijuana literature.

Of importance to this appeal are the items discovered in the house which connected Salois to the contraband. In a rear bedroom of the house, officers found small amounts of marijuana on the top of a highboy and more marijuana on the floor in a plastic bag. Also in that bedroom, officers found on the window sill a plastic bag containing rolling papers, a used "pot" pipe, and a check stub bearing Salois' name. Additionally, officers found in this bedroom seven documents, (e.g., envelopes, identification card, check voucher, etc.) with Salois' name on them. Officers found four such

2

documents with Salois' name on them in the kitchen, and six more in the livingroom. Finally, another "pot" pipe was found inside Salois' car which was parked in front of Shourds' house.

Salois was arrested June 12, 1987, and charged with criminal possession of dangerous drugs, a felony, and criminal possession of drug paraphernalia, a misdemeanor. Salois pleaded not guilty and trial was held on November 16 and 17, 1987. The jury convicted Salois of misdemeanor possession of marijuana, not the felony charge sought by the State, and misdemeanor possession of drug paraphernalia.

Salois raises three issues for review:

1. Was it error for the District Court to deny Salois' motion for directed verdict or dismissal of the felony possession of dangerous drugs charge?

2. Was there insufficient evidence to support the convictions since the State failed to scientifically test the contraband in the rear bedroom?

3. Was there jury misconduct which required the District Court to declare a mistrial?

Issue No. 1.

Was the failure of the District Court to either grant a directed verdict or dismiss the felony charge reversible error because it "effected [sic] the jury's deliberations and perceptions of the case against Salois?"

It is undisputed that the decision whether to grant a motion to dismiss or for a directed verdict lies within the sound discretion of the district judge. That decision will not be disturbed on appeal unless an abuse of discretion is shown. Furthermore, we have stated that a directed verdict should only be granted where there is no evidence upon which a jury could base a verdict. State v. Matson (Mont. 1987),

736 P.2d 971, 44 St.Rep. 874; State v. White Water (Mont. 1981), 634 P.2d 636, 38 St.Rep. 1664.

We conclude the District Judge did not abuse his discretion. A genuine factual issue existed whether Salois possessed a felony amount of marijuana. His personal belongings were found in most parts of the house, which could lead one to reasonably believe Salois had constructive possession of the marijuana in the master bedroom and was guilty of felony drug possession. Merely because the jury concluded Salois did not possess a felony amount of marijuana does not mean no evidence existed upon which a felony conviction could be based. In any case, the argument is without merit. Salois was found not guilty of the felony charge. His allegations of some residual prejudicial effect, while novel, are purely conclusory and without basis in fact or law.

Issue No. 2.

Was there insufficient evidence to support the convictions because the state failed to scientifically test all of the evidence?

The Lake County Sheriff's office sent to the State Crime Laboratory, for chemical analysis, some of the evidence seized in the search. Tested were the large block found in the closet, the 71 bags containing a leafy substance found between the bed and the wall in the master bedroom (which also included the leafy substance found in the living room) and the substance which was seized from a van parked in front of the house at the time of the search.

The sheriff's department did not send the evidence found in the rear bedroom to the crime lab for scientific analysis. Because of this, Salois argues the evidence was insufficient to support the conviction. We disagree.

4

Although we have previously stated that it is preferable to have suspected drug substances tested by the state crime lab, failure to do so does not always render the evidence insufficient to convict a defendant beyond a reasonable doubt. State v. Ostwald (1979), 180 Mont. 530, 591 P.2d 646; State v. Paulson (1975), 167 Mont. 310, 538 P.2d 339.

Detective Bruce Phillips, who executed the search, testified that he was a sergeant in the detective division and worked all undercover drug operations in Lake County. Phillips originally received his law enforcement training in 1969, and has been continually employed as a law enforcement officer in Lake County since 1980. Phillips testified that he was trained and experienced in drug investigations and drug identification. Based on this knowledge and experience, it was his opinion the evidence found in the plastic bag on the window sill of the rear bedroom was marijuana and that the pipe had been used to smoke marijuana. Under examination at trial, Phillips explained what led him to believe the substance in the rear bedroom was marijuana.

Direct examination by County Attorney Mr. Stermitz:

Q. Detective Phillips, I'm handing you what has been previously marked State's Exhibit 7. What does that items [sic] appear to you to be?

A. It's a plastic baggy containing what appears to be marijuana stems, seed, and a small amount of marijuana leaf.

Q. Do you know where that item came from?

A. Yes.

Q. Where?

A. It was some of the residue and so forth that I collected out of the bedroom in the northwest corner of the Shourds' residence.

. . .

Q. Why did you seize that particular
item?

A. It was apparent to me that it was
contraband and to show that there was
[sic] drugs also in that bedroom.

. . .

Q. Did you notice anything about it that
led you to believe that was contraband?

. . .

A. The structure and color of the seeds,
the type of stem and so forth, the
consistency and color of the leaves is
[sic] all consistent with what I know to
be marijuana.

Alice Ammen, a forensic scientist with the Montana
State Crime Laboratory also testified. Ammen stated that in
the past she had tested marijuana about 2,000 times, and
continued to analyse marijuana samples weekly at the crime
lab. She also testified that the evidence sent to her by the
Lake County Sheriff's office had been tested positive for
THC, the chemical substance found in marijuana. At trial she
was asked by the county attorney to examine the evidence
found in the rear bedroom.

Direct examination by Mr. Stermitz:

Q. I realize you have not seen these
items [State's Exhibits 1, 7, and 21]
before but I wonder from your experience
at the Crime Lab and all the examinations
you've performed, if you could describe
for the jury what any of these items show
to you.

A. Well, in State's Exhibit 21 it
appears that there are some roaches,
which are burnt butt ends of a hand-
rolled cigarette. And there looks like
marijuana seeds and a small amount of

6

green, leafy material and stems, which I
would strongly suspect to contain THC.

. . .

Cross-examination by defense counsel Mr. Anciaux:

Q. So would you give us your opinion as
to whether you think State's Exhibit 7 is
marijuana or not.

A. I would say, yes, it probably is.

. . .

Q. Can you tell us in your opinion if
that [State's Exhibit 8] is marijuana?

A. I would give it a 99 percent chance
of being marijuana.

In reviewing a jury's verdict in a criminal case where
it is alleged the evidence is insufficient to support the
verdict, our task is to determine if the verdict is supported
by substantial evidence. A verdict based on substantial
evidence will not be disturbed on appeal. State v. Price
(Mont. 1988), 762 P.2d 232, 234, 45 St.Rep. 1798, 1800; State
v. Pepperling (1974), 166 Mont. 293, 300, 533 P.2d 283, 287;
State v. Bouldin (1969), 153 Mont. 276, 284, 456 P.2d 830,
834-35.

We have previously examined this issue in Ostwald,
supra, where we held there was sufficient credible evidence
the suspected substance was marijuana.

Defendant moved for a directed
verdict of acquittal on that charge on
the grounds that the "valtox kit" test
used to identify the suspected substance
is not specific for marijuana and
therefore not conclusive. He contends
that because the substance was never sent
to the crime lab for positive
identification, the State has not met its
burden of proving beyond a reasonable
doubt that it was in fact marijuana. The

7

> State concedes that the "valtox kit" test
> is not specific for marijuana but argues
> that when the test results are considered
> together with the testimony of the
> officer who performed the test, a prima
> facia showing was made that the substance
> was marijuana. The officer testified
> that his identification of the substance
> was based not only on the test results,
> but also on the characteristic odor of
> marijuana with which he was familiar from
> past experience in possession cases.
>
> . . .
>
> [N]umerous cases hold that
> marijuana is not difficult to
> characterize without chemical analysis
> and that testimony of officers who have
> had experience searching for and
> identifying marijuana is sufficient. Cf.
> Cory v. State (1975), Okl.Cr., 543 P.2d
> 565; State v. Maupin (1975), 42 Ohio
> St.2d 473, 330 N.W.2d 708.

Ostwald, 591 P.2d at 652.

We find the State has presented sufficient evidence from which the jury could find the substance found in the rear bedroom was marijuana. Not only did experts identify the substance as marijuana, but evidence of the contraband, and associated paraphernalia, was found in nearly every room in the house. Additionally, officers executing the search warrant testified that the house smelled of burning marijuana.

Issue No. 3.

Was there jury misconduct which required the District Court to declare a mistrial?

Salois claims two jurors were overheard making statements before the case was submitted for the jury's deliberations which expressed prejudice and require a mistrial:

8

> One Juror: I'm glad I'm not associated
> with those people, that I don't have to
> associate with those people.
>
> Second Juror: Well, I guess we're on
> the jury.

We have held that the standard of review for overturning a district court's ruling on a motion for mistrial requires clear and convincing evidence that the trial court's ruling was error. State v. Hedrick (Mont. 1987), 745 P.2d 355, 357, 44 St.Rep. 1849, 1851; State v. Murray (Mont. 1987), 741 P.2d 759, 762, 44 St.Rep. 1394, 1397; State v. Counts (1984), 209 Mont. 242, 247-48, 679 P.2d 1245, 1248; Schmoyer v. Bourdeau (1966), 148 Mont. 340, 343, 420 P.2d 316, 317-18. Additionally, we held that if jury misconduct is shown tending to injure the defendant, prejudice will be rebuttably presumed:

> In this state, if jury misconduct
> is shown tending to injure the defendant,
> prejudice to defendant is presumed.
> However, the presumption is not absolute
> and may be rebutted by testimony of the
> juror showing facts which prove that
> prejudice or injury did not occur.
> (Emphasis added; citation omitted.)

Murray, 741 P.2d at 762, citing Counts, 679 P.2d at 1248.

We conclude there was no initial showing of prejudice against Salois. The District Court had only the bare statement of Salois that these statements were made. No juror affidavits were presented to the court to support his claim. Yet even if the jurors had been overheard making these comments, it is not evident that the statements were directed at Salois or his witnesses. The statements, if made, were brief and do not support the claim that they injured the defense. The United States Supreme Court in Turner v. Louisiana (1965), 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, recognized the distinction between a "brief

encounter" and an "intimate association" as it pertains either to the relationship amongst jurors or between jurors and witnesses, and the extent to which prejudice to the defendant is shown. We accepted this reasoning in State v. Dickens (1982), 198 Mont. 482, 488, 647 P.2d 338, 341-42. The comments claimed to have been made here do not reflect on intimate association; but are merely indicative of a brief encounter. We conclude that Salois has not presented evidence sufficient to require a mistrial.

Affirmed.

John Conway Harrison
Justice

We concur:

J. A. Turnage
Chief Justice

L. C. Gulbrandson

John C. Sheehy

William E. Hunt Sr.

R. C. McDonough
Justices

10